**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 19 CR 322 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| EDWARD M. BURKE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ALDERMAN EDWARD M. BURKE'S MOTION TO DISMISS AND/OR STRIKE
"AMTRAK/POST OFFICE"-BASED COUNTS AND RACKETEERING ACT**

Defendant, Alderman **EDWARD M. BURKE**, by and through his undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) to dismiss Counts Three and Four of the Superseding Indictment, and pursuant to F. R. Crim. P. 7(d), to strike as surplusage all references in Count One to the Amtrak/Post Office-aspect of Racketeering Act 1.

In support of this motion Defendant, through counsel, shows to the Court the following:

## I. <u>INTRODUCTION</u>

One aspect of the prosecution against Ald. Burke concerns his alleged involvement in helping or offering to help the owners of the Old Chicago Post Office with issues related to the redevelopment of that property. In particular, the Government alleges that Ald. Burke linked his assistance to the Post Office on its owners hiring Ald. Burke's law firm, Klafter & Burke, for tax work on other properties. The Government specifically claims that Ald. Burke was corruptly involved with the Post Office project in four distinct ways, one of which was Ald. Burke's alleged

use of his "contacts" at Amtrak to assist the Old Post Office owners concerning "problems" or "issues" with Union Station.[1]

But Ald. Burke's alleged *non-governmental* conduct in facilitating, or offering to facilitate, the Post Office's issues with Amtrak and Union Station—*i.e.*, assisting one non-City party with its next-door neighbor, another non-City party—is insufficient to support any of the charged offenses. That is true regardless of whether Ald. Burke sought compensation or something of value as part of that effort. Ald. Burke is not alleged to have taken or offered to take any action as a City official as part of the Post Office's "problems" or "issues" with Amtrak. Therefore, under Rule 12(b)(3)(B)(v) and taking all of the Amtrak allegations as true, the Superseding Indictment does not state an offense because it fails to allege official action—an essential element of the charged offenses. Accordingly, all of the Amtrak allegations—including in Racketeering Act 1 of Count One, and the substantive Travel Act charges in Counts Three and Four—should be dismissed and/or stricken.

## II. <u>PERTINENT CHARGES AND THE AMTRAK/POST OFFICE ALLEGATIONS</u>

The Superseding Indictment charges Ald. Burke in twelve counts: a violation of RICO, 18 U.S.C. §1962(c) (Count One); seven charges of violating the Travel Act, 18 U.S.C. § 1952(a)(3) (Counts Three, Four, Seven, Eight, Nine, Fifteen, and Sixteen); two charges of federal program bribery, 18 U.S.C. §666(a)(1)(B) (Counts Two and Eleven); and two charges of Hobbs Act extortion, 18 U.S.C. § 1951(a) (Counts Five and Six). Much of the RICO and Travel Act charges are based on the alleged Amtrak conduct, which is described in detail below. In particular, the Travel Act charges in Counts Three and Four identify three predicate state offenses (Bribery,

---

[1] The other aspects of Ald. Burke's alleged assistance to the Post Office owners charged in the Superseding Indictment—the City Tax Increment Financing ("TIF") Funds, Class L tax status, a City Water Department approval—are not at issue in this motion.

Official Misconduct, and Commercial Bribe Receiving, in violation, respectively, of 720 ILCS 5/33-1(e), 5/33-3(a)(4), and 5/29A-2), each of which is based solely on the Amtrak allegations. In turn, Racketeering Act 1 of the RICO charge in Count One has a number of alternative predicate offenses, including the same Amtrak conduct as alleged in Counts Three and Four. Sup. Indict. at ¶ 84.

Amtrak is a corporation, established by federal legislation, which also owns and operates Union Station in Chicago. *Id.* at ¶ 1(k). Part of Union Station's property was adjacent to the Old Chicago Post Office property. *Id.* The Post Office was purchased by a New York-based real estate company for commercial renovation and redevelopment. *Id.* at ¶ 1(i). According to the Superseding Indictment, Ald. Burke allegedly "corruptly solicited" legal business from the Post Office owners for Ald. Burke's law firm in return for his "*official assistance* concerning the redevelopment of, and financing concerning, the Post Office project." *Id.* at ¶ 5 (emphasis added).

As noted above, one of the aspects of the purported "official assistance" that Ald. Burke offered to the Post Office owners related to "issues" or "problems" that the Post Office was having with its neighbor, Union Station. In particular, Ald. Burke allegedly had a meeting with representatives of the Post Office during which he solicited tax work for Klafter & Burke. *Id.* at ¶ 8. During that meeting, the Post Office representatives mentioned that one of the "issues" facing their redevelopment project was "problems with Amtrak." *Id*. Ald. Burke allegedly responded that there are not "too many people around town that we don't know." *Id.*

Weeks later, Alderman A (who was covertly cooperating with Government agents) was scripted by the FBI "as a ruse" to have a private conversation with Ald. Burke in which he falsely told Ald. Burke that the Post Office owners would retain Ald. Burke's law firm in exchange for

his assistance with issues concerning Amtrak. After Ald. A's comment about Amtrak, Ald. Burke allegedly responded: "Okay, great." *Id.* at ¶ 10.

About ten days later, Ald. Burke and Ald. A had another discussion, which again included the topic of the Post Office's problems with Amtrak and referenced an Amtrak executive with whom Ald. Burke was personally acquainted, "Individual A-3." *Id.* at ¶ 11. Ald. Burke allegedly said that the Amtrak executive "could be worked with," although that executive had no reason to do any favors for the Post Office owners. *Id.* Ald. Burke then allegedly linked his assisting the Post Office with Amtrak, on the one hand, to the Post Office retaining Klafter & Burke, on the other hand. *Id.*

About five months later, Ald. A met with Ald. Burke and told Ald. Burke that the Post Office purportedly still had two issues that needed to be resolved. One of the issues was "with Amtrak." *Id.* at ¶ 16. Ald. Burke allegedly responded that he was not "motivated" because the Post Office owners had not yet retained Klafter & Burke. *Id.*

A week later, Ald. A told Ald. Burke that the Post Office owners had agreed to give tax work to Ald. Burke's law firm in the future. With respect to the Post Office's issues with its neighbor Union Station, Ald. Burke told Ald. A that Ald. Burke "would follow up with his contacts at Amtrak." *Id.* at ¶ 17. Ald. Burke then had a series of communications with his "contact" at Amtrak (the Amtrak executive with whom Ald. Burke was personally acquainted) and with a representative of the Post Office owners in an effort to "resolv[e] the outstanding problems with Amtrak." *Id.* at ¶¶ 18-22.

The Superseding Indictment alleges that subsequent to Ald. Burke helping to resolve the issues between the Post Office and Amtrak, the owners of the Post Office entered into a contingent

fee agreement with Klafter & Burke to perform real estate tax work for a separate property. *Id.* at ¶ 30.

## II.     THE AMTRAK/POST OFFICE-BASED COUNTS AND RACKETEERING ACT FAIL TO STATE ANY OFFENSE

The allegations concerning Ald. Burke's offered assistance with or participation in the Post Office's issues with its neighbor, Amtrak/Union Station, form the basis for both Counts Three and Four and one of the four bases for Racketeering Act 1 in Count One. The predicates for all of those charged offenses are state law "bribery," "official misconduct," and "commercial bribe receiving." But Ald. Burke's alleged conduct concerning Amtrak, even if taken as true, does not amount to an offense under *any* of those three state statutes, let alone any federal offense. That is because Ald. Burke's alleged conduct regarding Amtrak did not amount to or involve any official action, an essential element of both the state bribery and official misconduct statutes. Nor did Ald. Burke's alleged conduct involve an understanding that Ald. Burke's duties as "an employee or fiduciary" of the City of Chicago would be influenced, as would be required under the "commercial bribe receiving" statute. Therefore, those allegations should be stricken and the corresponding charges dismissed.

The Illinois offense of "bribery" is an anti-public corruption statute. Specifically, it states:

> A person commits bribery when: . . . (e) He or she solicits, receives, retains, or agrees to accept any property or personal advantage pursuant to an understanding that he or she shall improperly influence or attempt to influence *the performance of any act related to the employment or function of any public officer*, public employee, juror or witness.

720 ILCS 5/33-1(e) (emphasis added). The terms "public officer" and "public employee" are defined by the Illinois Pattern Instructions to mean one who is a public officer or employee of "any political subdivision of the State [of Illinois.]" IL Pattern Instr., 21.11.[2]

As an Alderman of the City of Chicago, Ald. Burke was no doubt a "public officer" within the meaning of the Illinois bribery statute. However, with respect to the Amtrak/Post Office aspects of the Superseding Indictment, Ald. Burke is not alleged to have entered into any understanding to influence "the performance of any act related to the employment or function" of his Aldermanic office, because neither his employment nor any function of his office involves oversight of Amtrak—a non-City party over which he holds no authority. In determining whether an act is "related to the employment or function," of a public officer, courts look to the public officer's job duties. *See, e.g.*, *In re Fleischman*, 135 Ill. 2d 488, 496 (1990) (an attorney committed bribery when he made payments to tax appeal board officials to induce the officials to read tax appeal files, because the officials were "legally required" to read tax appeal files as part of their job duties); *People v. Lumsargis*, 2017 IL App (4th) 170157-U, ¶ 72 ("trying to induce a public officer to do his job will not work as a defense" to bribery). Here, no part of Ald. Burke's job description includes overseeing Amtrak, nor does anything related to Amtrak—a non-City party over which Ald. Burke holds no authority—involve his "employment."[3] Therefore, Ald. Burke's alleged assistance to the Post Office with Amtrak/Union Station did not involve his performance of any official act.

---

[2] As set forth in Defendant's Memorandum of Law in Support of His Motion to Dismiss and Strike the State Bribery, Commercial Bribery & Official Misconduct Charges, counsel submit that this statute is unconstitutionally broad and vague. However, counsel assume for purposes of this motion the statute passes constitutional muster.

[3] Additionally, the Superseding Indictment does not plead that Ald. Burke's contact at Amtrak was himself a public officer. Amtrak is a corporation established by federal legislation, which provides that Amtrak "[W]ill not be an agency or establishment of the United States Government." *See* Rail Passenger Service Act of 1970, Pub. L. No. 91-518, § 301, 84 Stat. 1327, 1330.

Instead, as the Superseding Indictment makes clear, Ald. Burke offered to use his personal "contacts" with "an Amtrak executive" to assist a would-be client who happened to be a neighbor of Amtrak's Union Station. That offer did not involve Ald. Burke promising to take any action as a public official. The fact that Ald. Burke allegedly conditioned his assistance with Amtrak on the would-be client becoming an actual client fails to state an Illinois "bribery" offense because no official action is, or could be, alleged. Since that predicate state-law charge fails, so too falls the federal Travel Act and RICO charges based on it. *See e.g.*, *United States v. Ferber*, 966 F. Supp. 90, 106 (D. Mass. 1997) (dismissing Travel Act counts when defendant's conduct, as charged under the Massachusetts gratuity statute, did not constitute a valid predicate offense under the Travel Act) (citing *Perrin v. United States*, 444 U.S. 37, 50 (1979)); *United States v. Nardello*, 393 U.S. 286, 295 (1969)).

Likewise, Illinois' "Official Misconduct" statute is constrained to a "public officer" when acting "in his official capacity":

> (a) A public officer or employee . . . commits misconduct when, *in his official capacity* . . . he or she commits any of the following acts: . . . (4) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law."

720 ILCS 5/33-3(a)(4). Again, because Ald. Burke's alleged promise to assist the Post Office with Amtrak did not involve him acting "in his official capacity," that aspect of the RICO charge, and the entirety of Counts Three and Four, cannot be sustained. Under the official misconduct statute, "[a]n act is performed in a public officer's official capacity if it is accomplished by exploitation of his public position." *People v. Lynn*, 223 Ill. App. 3d 688, 691 (1992) (citing *People v. Kleffman*, 90 Ill. App. 3d 1, 412 N.E.2d 1057 (1980)). Here, Ald. Burke merely made use of his own private, personal relationship with his contact at Amtrak, and did not exploit his *public* position and an Alderman. *See People v. Gray*, 221 Ill. App. 3d 677, 680–82 (4th Dist. 1991) (reversing

defendant's official misconduct conviction where the state failed to prove defendant acted "in his official capacity"); *People v. Jordan*, 15 Ill. App. 3d 672, 676 (1st Dist. 1973) (reversing defendant-police officer's convictions for bribery and official misconduct where officer was on duty but state failed to show he acted in his "official capacity" in accepting cash payment).

Instructive here, the Supreme Court's seminal decision in *McDonnell v. United States* has narrowly defined "official action" in the context of bribery offenses under other federal statutes, including 18 U.S.C. § 201 (bribery of public officials) § 1343 (honest services fraud), and § 1951 (Hobbs Act extortion under color of official right). 136 S. Ct. 2355 (2016). The Court held that for such bribery offenses, "setting up a meeting, calling another public official, or hosting an event does not, standing alone, qualify as an 'official act.'" *Id.* at 2368. Rather, an official act requires some "formal exercise of governmental power, such as a lawsuit, hearing, or administrative determination." *Id.*

Here, Ald. Burke's conduct did not involve Ald. Burke promising to take *any* action as a public official, much less a "formal exercise of such power." Therefore, while supportive, the *McDonnell* decision is not essential to the instant motion. At issue in *McDonnell* was whether the Virginia governor, acting in his role as governor, took or offered to take "official action" to benefit a company in exchange for loans and gifts the governor received from the CEO of that company. The question in *McDonnell* was not whether the governor was acting in his role as governor (he was). The issue instead was whether *McDonnell's* conduct amounted to "official action." Here, in contrast, Ald. Burke did not take or offer to take any action in his role as Alderman. Therefore, one need not even consider the question of whether Ald. Burke promised any "official action" as that term was restricted in *McDonnell.*

The third and final state law predicate for the Amtrak-related RICO and Travel Act charges is titled "Commercial Bribe Receiving," and provides:

> An employee, agent or fiduciary commits commercial bribe receiving when . . . he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that such benefit will *influence his conduct in relation to his employer's or principal's affairs*.

720 ILCS 5/29A-2 (emphasis added). Although not articulated in terms of "official action," the gravamen of this offense likewise requires that the bribe-recipient agree that "his conduct in relation to his employer's or principal's affairs" be influenced by the payment. Because Ald. Burke's only alleged "employer" or "principal" here is the City of Chicago, the effect of the statute is the same: Ald. Burke must have acted (or agreed to act) within the scope of his City governmental duties for the statute to apply, and the benefit solicited or accepted needed to have influenced Ald. Burke's "conduct in relation to [the City of Chicago's] affairs." Amtrak oversight has nothing to do with either Ald. Burke's duties or the affairs of the City of Chicago. Therefore, taking all of the Amtrak allegations in the Superseding Indictment as true, commercial bribery is not properly alleged here. *See e.g.*, *Rao v. BP Prods. N. Am., Inc.*, No. 04 C 6040, 2007 U.S. Dist. LEXIS 6074, *11–15 (N.D. Ill. Jan. 19, 2007) (a franchise owner's payment of bribes to a regional manager to influence the manager's decisions regarding the franchise owner's interests is a "paradigmatic example of commercial bribery" under Illinois law). Again, with respect to the Amtrak/Post Office aspect of the Superseding Indictment, Ald. Burke is not alleged to have taken or offered to take any such governmental actions.

## III.   **CONCLUSION**

The Superseding Indictment fails to state an offense under any of the three predicate state-law crimes (Bribery, Official Misconduct, Commercial Bribe Receiving) with respect to the

Amtrak/Post-Office allegations. Ald. Burke is neither alleged to have acted in his official capacity, nor alleged to have promised to undertake any official action, in the private dispute that the owners of the Old Post Office were having with their neighbor, Amtrak/Union Station. Ald. Burke instead allegedly offered to use his personal "contacts" with Amtrak to help the Old Post Office developers to gain access to Union Station's adjacent property. That Ald. Burke allegedly linked his assistance with Amtrak on the Post Office owners retaining Klafter & Burke is irrelevant unless Ald. Burke's assistance were to have taken the form of official action. Since it did not, no state offense is alleged.

The lack of any predicate state offense thus requires dismissal of the Travel Act charges based on those predicates in Counts Three and Four. Sup. Indict. at 40–41. Similarly, with respect to Racketeering Act 1 in Count One, the lack of any predicate state offense based on the Amtrak/Post Office allegations requires that those allegations be stricken as surplusage. *Id.* at pp. 30–31. In particular, subparagraphs (c) and (d) of paragraph 84 should be stricken in their entirety, and the references to Amtrak should be stricken from subparagraphs (a) and (b) of paragraph 84. *Id.* at p. 29–31. Additionally, all other references to Amtrak in Count One should be stricken. *See generally id.* at ¶ 1(k), ¶8–30.

For the foregoing reasons, Ald. Burke respectfully requests that the Court grant this Motion.

Dated:  August 20, 2020                    Respectfully Submitted,

                                           **JENNER & BLOCK LLP**

                                           By:  /s/ Charles B. Sklarsky
                                               Charles B. Sklarsky
                                               Anton R. Valukas
                                               E.K. McWilliams
                                               353 N. Clark Street
                                               Chicago, IL 60654
                                               Tel: (312) 222-9350
                                               csklarsky@jenner.com
                                               avalukas@jenner.com
                                               emcwilliams@jenner.com

                                           **LOEB & LOEB LLP**

                                           By:  /s/ Joseph J. Duffy
                                               Joseph J. Duffy
                                               Andrew R. DeVooght
                                               Robin V. Waters
                                               321 N. Clark Street, Suite 2300
                                               Chicago, IL 60654
                                               Tel: (312) 464-3100
                                               jduffy@loeb.com
                                               adevooght@loeb.com
                                               rwaters@loeb.com

                                           *Attorneys for Alderman Burke*