# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 19 CR 322 |
| Plaintiff, | ) | |
| v. | ) | Judge Virginia M. Kendall |
| EDWARD M. BURKE, et al., | ) | |
| Defendants. | ) | |

## DEFENDANT EDWARD M. BURKE'S RESPONSE TO
## THE GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

<div style="display:flex">

JENNER & BLOCK LLP
Charles B. Sklarsky
Kimberly Rhum
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
csklarsky@jenner.com
krhum@jenner.com

LOEB & LOEB LLP
Joseph J. Duffy
Robin V. Waters
321 N. Clark Street, Suite 2300
Chicago, IL 60654
Tel: (312) 464-3100
jduffy@loeb.com
rwaters@loeb.com

GAIR EBERHARD NELSON
DEDINAS LTD
Chris Gair
Blake Edwards
1 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel: (312) 600-4901
cgair@gairlawgroup.com
bedwards@gairlawgroup.com

</div>

*Attorneys for Edward M. Burke*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION .................................................................................................. 1

LEGAL STANDARDS .......................................................................................... 2

ARGUMENT ......................................................................................................... 3

I.     Gov't MIL I: Require Notice and Proffer of Entrapment Defense ................... 3

II.    Gov't MIL II: Bar Evidence or Argument of Government Tactics or
Motives ......................................................................................................... 4

     A.     Reasons for Investigating ......................................................... 4
     B.     Propriety of Investigative Techniques ...................................... 5
     C.     Outrageous Government Conduct .............................................. 6
     D.     Terms of Solis' Plea Deal ......................................................... 7
     E.     Uncharged Individuals .............................................................. 7

III.     Gov't MIL III: Exclude Evidence and Argument Regarding Solis's
Other Acts ..................................................................................................... 8

     A.     Impeachment of Solis Unless and Until He Testifies ............... 8
     B.     Confrontation Clause and Rule 806 Arguments ....................... 9
     C.     Defendants May Not Call Solis Solely to Impeach Him .......... 10

IV.     Gov't MIL IV: Intent of Uncharged Individuals ............................................ 10

V.     Gov't MIL V: Evidence of Harry Skydell's Intent .......................................... 14

VI.     Gov't MIL VI: Preclude Opening Statements Regarding the
Applicable Law .............................................................................................. 16

VII.     Gov't MIL VIII: "Jury Nullification" ............................................................. 17

     A.     "Politics as Usual" ................................................................... 17
     B.     Penalties Faced by Defendants if Convicted ........................... 18
     C.     "Golden Rule" Arguments ........................................................ 19

VIII.     Gov't MIL IX: Exclude Questions and Comments on Contents of
Unplayed or Unrecorded Conversations ....................................................... 19

IX.     Gov't MIL X: Exclude Evidence of Defendants' Prior Good Conduct
or Lawfulness ................................................................................................ 21

X.      Gov't MIL XI: Exclude Evidence of Witnesses' Bad Acts ................................. 23

XI.     Gov't MIL XII: Motion to Preclude Discovery Requests or
        Commentary in Presence of Jury ................................................................ 25

XII.    Gov't MIL XIII: Preclude Comment on Evidentiary Rulings ......................... 25

XIII.   Gov't MIL XIV: Motion to Exclude Missing Witnesses ................................. 25

XIV.    Gov't MIL XV: Preclude Reasonable Doubt Definition .................................. 26

XV.     Gov't MIL XVI: Recall Government Witnesses ............................................... 26

XVI.    Gov't MIL XVII: Preclude "Use" of Agent Reports ....................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC,*
    79 F.4th 1262 (10th Cir. 2023) ................................................................... 29

*Berry v. Deloney,*
    28 F.3d 604 (7th Cir. 1994) ...................................................................... 20

*Crane v. Kentucky,*
    476 U.S. 683 (1986) ............................................................................ 2, 3

*United Sates ex rel. Dowd v. Lane,*
    574 F. Supp. 972 (N.D. Ill. 1983) ............................................................... 8

*E.I. DuPont De Nemours & Co. v. Kolon Indus.,*
    564 F. App'x 710 (4th Cir. 2014) ................................................................. 2

*Hemetek v. United States,*
    2012 WL 3870605 (S.D. W. Va. Sept. 6, 2012), *aff'd*, 527 F. App'x 261 (4th Cir.
    2013)................................................................................................. 2

*Hemetek v. United States,*
    No. 3:08-cr-00198, 2012 WL 3870620 (S.D. W. Va. Apr. 25, 2012) ....................... 2

*Horton v. Litscher,*
    427 F.3d 498 (7th Cir. 2005) ..................................................................... 3

*Jankins v. TDC Mgmt. Corp.,*
    21 F.3d 436 (D.C. Cir. 1994) ................................................................... 29

*Linkepic Inc. v. Vyasil,*
    No. 12 C 09058, 2019 WL 11717160 (N.D. Ill. Oct. 15, 2019).................... 1, 21, 24

*Loera v. Amtrak,*
    No. 02 C 736, 2004 WL 2584786 (N.D. Ill. Nov. 9, 2004)........................................ 1

*People v. Gralewski,*
    132 Ill. App. 2d 755 (1971) ................................................................... 15, 16

*People v. Lyons,*
    4 Ill. 2d 396 (1954)................................................................................ 16

*Shannon v. United States,*
    512 U.S. 573 (1994) ..................................................................................... 18

*Shotts v. GEICO Gen. Ins. Co.,*
    2018 WL 4832625 (W.D. Okla. July 12, 2018) ................................................ 1, 19

*Taylor v. Illinois,*
    484 U.S. 400 (1988) ....................................................................................... 3

*United States v. Adames,*
    56 F.3d 737 (7th Cir. 1995) ........................................................................... 27

*United States v. Amato,*
    No. 03-CR-1382 (NGG), 2006 WL 1891113 (E.D.N.Y. June 27, 2006) ........... 29, 30

*United States v. Anderson,*
    716 F.2d 446 (7th Cir. 1983) ........................................................................ 17

*United States v. Avenatti,*
    432 F. Supp. 3d 354 (S.D.N.Y. 2020) ............................................................ 15

*United States v. Azteca Supply Co.,*
    No. 10CR80, 2010 WL 4962828 (N.D. Ill. Dec. 1, 2010) .................................. 5

*United States v. Barton,*
    No. 1:19-cr-00733, 2021 WL 3800171 (N.D. Ill. Aug. 26, 2021) ...................... 24

*United States v. Baskes,*
    649 F.2d 471 (7th Cir. 1980) ......................................................................... 13

*United States v. Benalcazar,*
    No. 09 CR 144, 2011 U.S. Dist. LEXIS 111453 (N.D. Ill. Sept. 29, 2011) ......... 13

*United States v. Blagojevich,*
    794 F.3d 729 (7th Cir. 2015) ......................................................................... 13

*United States v. Blum,*
    62 F.3d 63 (2d Cir. 1995) ............................................................................... 3

*United States v. Brown,*
    303 F.3d 582 (5th Cir. 2002) ......................................................................... 29

*United States v. Cheyenne,*
    558 F.2d 902 (8th Cir. 1977) ......................................................................... 29

*United States v. Coppola,*
    671 F.3d 220 (2d Cir. 2012) ........................................................................... 12

*United States v. D'Arco*,
  No. 90 CR 1043, 1991 WL 264504 (N.D. Ill. Oct. 24, 1991) .................................. 24

*United States v. Davis*,
  845 F.3d 282 (7th Cir. 2016) ................................................................................... 27

*United States v. Enns*,
  No. 15-10045-JTM, 2015 WL 8770006 (D. Kan. Dec. 14, 2015) ............................ 2

*United States v. Fazio*,
  2012 U.S. Dist. LEXIS 51147 (S.D.N.Y. April 11, 2012) ................................ 11, 23

*United States v. Finley*,
  708 F. Supp. 906 (N.D. Ill. 1989) ........................................................................... 23

*United States v. Garber*,
  607 F.2d 92 (5th Cir. 1979) ...................................................................................... 3

*United States v. Giles*,
  246 F.3d 966 (7th Cir. 2001) ................................................................................... 10

*United States v. Goulding*,
  26 F.3d 656 (7th Cir. 1994) ...................................................................................... 5

*United States v. Hale*,
  422 U.S. 171 (1975) ................................................................................................ 26

*United States v. Hocking*,
  860 F.2d 769 (7th Cir. 1988) ............................................................................ 15, 16

*United States v. Hoffman*,
  964 F.2d 21 (D.C. Cir. 1992) .................................................................................. 20

*United States v. Jenner*,
  62 F.3d 1419 (7th Cir. 1995) .................................................................................... 8

*United States v. Latimer*,
  511 F.2d 498 (10th Cir. 1975) ................................................................................ 20

*United States v. LeFevour*,
  798 F.2d 977 (7th Cir. 1986) ...................................................................... 21, 22, 23

*United States v. Lewis*,
  110 F.3d 417 (7th Cir. 1997) .................................................................................. 18

*United States v. Lewis*,
  954 F.2d 1386 (7th Cir. 1992) ................................................................................ 27

*United States v. Lussier,*
   929 F.2d 25 (1st Cir. 1991) ............................................................................. 3

*United States v. Manzano (In re United States),*
   945 F.3d 616 (2d Cir. 2019) ........................................................................... 18

*United States v. McClain et al.,*
   20 CR 812 (N.D. Ill.) ..................................................................................... 23

*United States v. Messino,*
   855 F. Supp. 955 (N.D. Ill. 1994) ................................................................. 24

*United States v. Mitov,*
   460 F.3d 901 (7th Cir. 2006) ......................................................................... 11

*United States v. Molina,*
   407 F.3d 511 (1st Cir. 2005) ........................................................................... 3

*United States v. Morgan*
   635 F. App'x 423, 428-32 (10th Cir. 2015) ................................................... 15

*United States v. Muhammad,*
   120 F.3d 688 (7th Cir. 1997) ......................................................................... 29

*United States v. Noel,*
   581 F.3d 490 (7th Cir. 2009) ......................................................................... 12

*United States v. Patel,*
   No. 01 CR 716, 2002 WL 1750948 (N.D. Ill. July 18, 2002) ....................... 24

*United States v. Praetorius,*
   622 F.2d 1054 (2d Cir. 1979) ......................................................................... 28

*United States v. Price,*
   617 F.2d 455 (7th Cir. 1979) ......................................................................... 11

*United States v. Ring,*
   706 F.3d 460 (D.C. Cir. 2013) ....................................................................... 15

*United States v. Sanders,*
   No. 2:08-CR-22 JVB, 2011 WL 134083 (N.D. Ind. Jan. 14, 2011), *aff'd,* 708 F.3d
   976 (7th Cir. 2013) ......................................................................................... 18

*United States v. Schampers,*
   No. 22-CR-31, 2023 WL 1098445 (E.D. Wis. Jan. 30, 2023) ......................... 5

*United States v. Schoenborn*,
   4 F.3d 1424 (7th Cir. 1993) ........................................................................ 27

*United States v. Schoneberg*,
   396 F.3d 1036 (9th Cir. 2005) ...................................................................... 8

*United States v. Shields*,
   No. 90 CR 1044, 1991 WL 236492 (N.D. Ill. Aug. 13, 1991) ......................... 22, 23

*United States v. Sims*,
   808 F. Supp. 607 (N.D. Ill. 1992) ............................................................... 24

*United States v. Sternstein*,
   596 F.2d 528 (2d Cir. 1979) ......................................................................... 3

*United States v. Thompson*,
   37 F.3d 450 (9th Cir. 1994) ........................................................................ 20

*United States v. Torres-Galindo*,
   206 F.3d 136 (1st Cir. 2000) ....................................................................... 29

*United States v. Van Eyl*,
   No. 02 CR 287, 2004 U.S. Dist. LEXIS 12635 (N.D. Ill. July 8, 2004) ............. 13

*United States v. Wantuch*,
   525 F.3d 505 (7th Cir. 2008) ...................................................................... 12

*Watkins v. Sowders*,
   449 U.S. 341 (1981) ................................................................................... 25

*Wells Fargo Bank, N.A. v. Siegel*,
   No. 05 C 5635, 2007 WL 1118442 (N.D. Ill. Apr. 16, 2007) ........................... 1

**Statutes**

720 ILCS § 5/33-1(e) ...................................................................................... 15, 16

18 U.S.C. § 201 ............................................................................................... 15

18 U.S.C. § 666 .......................................................................................... 13, 15

18 U.S.C. § 1951(b)(2) ..................................................................................... 11

18 U.S.C. § 1952 ............................................................................................. 14

18 U.S.C. § 3500 ............................................................................................. 28

18 U.S.C. § 3500(e) ............................................................................................ 28

**Other Authorities**

5 J. Wigmore, Evidence § 1367, p. 32 (J. Chadbourn rev.1974) ................................ 25

Fed. R. Evid. 401 .................................................................................................. 3

Fed. R. Evid. 405 ................................................................................................ 21

Fed. R. Evid. 405(a) ........................................................................................... 21

Fed. R. Evid. 406 ................................................................................................ 23

Fed. R. Evid. 608 ........................................................................................... 23, 24

Fed. R. Evid. 608(b) ........................................................................................... 24

Fed. R. Evid. 612 ................................................................................................ 29

Fed. R. Evid. 613 ........................................................................................... 27, 28

Fed. R. Evid. 613(b) ........................................................................................... 28

Fed. R. Evid. 801 ................................................................................................ 28

Fed. R. Evid. 801(a) ........................................................................................... 28

Fed. R. Evid. 803(5) ....................................................................................... 27, 28

Fed. R. Evid. 806 ............................................................................................ 7, 9

## **INTRODUCTION**

Defendants object to the Government's Consolidated Motions *in Limine* ("Gov't Motion") (Dkt. 256) because they are virtually all vague, boilerplate motions that do not identify specific evidence the Government seeks to exclude. The Government's motions *in limine* are largely inappropriate for pre-trial resolution and should be denied.

The Government's motions here amount to little more than a request that the Court enforce the Rules of Evidence, which is not a proper use of a motion *in limine*. *Linkepic Inc. v. Vyasil*, No. 12 C 09058, 2019 WL 11717160, at *1 (N.D. Ill. Oct. 15, 2019) ("[T]his motion [*in limine*] is just a make-work request to enforce the Rules of Evidence, so it is denied as unnecessary."). Counsel for Defendants know the evidentiary rules and will abide by them. The vague, generalized requests to exclude evidence or argument like those made by the Government here should be denied. *Shotts v. GEICO Gen. Ins. Co.*, 2018 WL 4832625, at *1, *5 (W.D. Okla. July 12, 2018) ("A motion in limine should address specific evidence that is irrelevant, inadmissible or prejudicial. Thus, motions in limine that generally lack specificity as to particular evidence are properly denied."); *Wells Fargo Bank, N.A. v. Siegel*, No. 05 C 5635, 2007 WL 1118442, at *3 (N.D. Ill. Apr. 16, 2007) (denying motion *in limine* that failed to identify specific evidence that the other party would introduce at trial because "a vague and generalized request that [a party] follow the Federal Rules of Civil Procedure is not appropriate for a motion *in limine*" because those rules already bind the parties); *Loera v. Amtrak*, No. 02 C 736, 2004 WL 2584786, at *3 (N.D. Ill. Nov.

9, 2004) (denying multiple motions *in limine* that did not seek to exclude specific evidence, observing "generalized requests have no place in a motion *in limine*").

Granting motions *in limine* that seek to preclude vague and undefined lines of argument (as opposed to motions to exclude specific evidence or clearly-defined topics) is prejudicial because it injects uncertainty as to whether certain statements fall within the scope of the exclusion. *See E.I. DuPont De Nemours & Co. v. Kolon Indus.*, 564 F. App'x 710, 711, 715 (4th Cir. 2014) (recognizing that broad pretrial evidentiary rulings, like that requested by a generalized motion *in limine*, present a serious risk of excluding admissible evidence). What is more, in criminal cases, such motions may have an unwarranted chilling effect on the defense, causing counsel to avoid proper topics lest they be found to have violated a vague prohibition. Such motions waste, rather than conserve, judicial resources because it invites further argument about the precise bounds of the vaguely-defined categories. *See Hemetek v. United States*, No. 3:08-cr-00198, 2012 WL 3870620, at *9 (S.D. W. Va. Apr. 25, 2012), *report and recommendation adopted*, 2012 WL 3870605 (S.D. W. Va. Sept. 6, 2012), *aff'd*, 527 F. App'x 261 (4th Cir. 2013) (stating "a motion *in limine* seeking to prohibit generic, unspecified" evidence is "not . . . useful"); *United States v. Enns*, No. 15-10045-JTM, 2015 WL 8770006, at *1 (D. Kan. Dec. 14, 2015) (same).

Because the Government has not met the standard for prevailing on a motion *in limine*, its motions should be denied.

## **LEGAL STANDARDS**

Criminal defendants are guaranteed "a meaningful opportunity to present a complete defense" by the Constitution. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)

(citations omitted). Defendants further have the right to present "competent, reliable evidence bearing on the credibility of [the prosecution's evidence]." *Id.* Thus, evidentiary rulings that "exclude[] a potentially viable line of defense" violate a defendant's Sixth Amendment rights. *United States v. Molina*, 407 F.3d 511, 524 (1st Cir. 2005) (explaining that the Constitution "guarantees criminal defendants the right to present a defense" under the Sixth Amendment) (quoting *United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995)); *Horton v. Litscher*, 427 F.3d 498, 504 (7th Cir. 2005) ("[A]t a minimum, . . . criminal defendants have the right . . . to put before a jury evidence that might influence the determination of guilt.") (quoting *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (cleaned up)). And, "many courts have given the accused 'wide latitude' in the introduction of evidence which may tend to show a lack of willfulness or specific intent." *See, e.g., United States v. Lussier*, 929 F.2d 25, 31 (1st Cir. 1991) (citing *United States v. Sternstein*, 596 F.2d 528, 530 (2d Cir. 1979)); *see also United States v. Garber*, 607 F.2d 92, 99 (5th Cir. 1979) ("[W]here the element of willfulness is critical to the defense, the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent").

Evidence is relevant, including to advance a defense, if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." Fed. R. Evid. 401.

## ARGUMENT

## I. Gov't MIL I: Require Notice and Proffer of Entrapment Defense

The Government offers no authority supporting its request for notice of an entrapment defense or to make a proffer of evidence before raising such a defense.

3

Nevertheless, the defense has agreed to provide notice on or before October 16, 2023. It hereby provides notice that based on the evidence disclosed to date, it does not presently intend to present an entrapment defense.

This does not imply, however, that Mr. Burke will not be able to introduce admissible evidence relating to Solis' actions and statements vis-à-vis Mr. Burke. Solis' statements and actions, which are said by the Government to give "context" to Mr. Burke's statements, are relevant to the lack of proof by the Government of Mr. Burke's intent.

## II. Gov't MIL II: Bar Evidence or Argument of Government Tactics or Motives

### A. Reasons for Investigating

The Government hypothesizes that the defense will offer evidence and argument concerning the Government's "motives" or "reasons" for investigating Defendants. (Gov't Mot. at 6). This vague and overbroad motion should be denied.

Defendants will follow the Rules of Evidence and require no motion *in limine* to instruct them to do so. The Government's motion, however, sweeps far more broadly. Defendants are entitled to elicit testimony from witnesses involved in the relevant conduct as to their own actions. For example, it is highly likely that investigating agents will testify to their own actions. It would be absurd to suggest that the defense cannot cross-examine them for the "reasons" why they did something; indeed, it is virtually certain that the Government will do exactly this on direct examination.

In addition, evidence regarding witnesses' may be relevant to credibility and is therefore a proper subject of examination. *See United States v. Schampers*, No. 22-CR-31, 2023 WL 1098445, at *1 (E.D. Wis. Jan. 30, 2023) ("[A] defendant is free to challenge the credibility of any witness.") "This is often accomplished by asking questions intended to show bias or prejudice, which may involve the motivation of the government agents and investigators." *Id.* (citing *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994)); *see also United States v. Azteca Supply Co.*, No. 10CR80, 2010 WL 4962828, at *9 (N.D. Ill. Dec. 1, 2010) ("[A]rgument or questioning about the motivation for investigating this case or arguments regarding the culpability of uncharged individuals and entities may be relevant for impeachment purposes."). Defendants should not be precluded from submitting this relevant evidence in their defense.

### B. Propriety of Investigative Techniques

Mr. Burke will follow the law. He does not intend to put in issue the legality of the Government's investigatory techniques.

The rest of the Government's motion is so vague as to be impossible to understand or rule upon at this time. The Government will elicit extensive testimony reflecting how it investigated the case. The defense is entitled to challenge the evidence resulting from those investigative techniques, to point out where the statements made by Danny Solis were untrue, to cross-examine witnesses regarding Mr. Solis and the tapes he made, and other matters that relate to the techniques. The defense is also entitled to point out flaws in the Government's evidence that go to questions of whether reasonable doubt exists.

5

All the matters raised by the Government, except for barring testimony on the legality of Government investigative tactics, depend on the specific evidence elicited at trial. Therefore, the Court should: (a) deny the request relating to the legality of the techniques as an unnecessary and improper direction to the lawyers to follow the law; and (b) deny the remaining requests as vague and premature.

C.     **Outrageous Government Conduct**

In Part C of this motion, the Government seeks an order that "defendants should be precluded from attempting to defend this case by attacking the propriety of the government's conduct." (Gov't Mot. at 11). In support of this wildly overbroad request, the Government cites only cases indicating that the Government's "outrageous conduct" is not a basis for acquitting one who has committed a crime. The defense has no intention of arguing that defendants should be acquitted even if the Government meets its evidentiary burden. But *that* well-established principle does not support the Government's attempt to contort it into a bar against the defense mentioning the Government's conduct, which is highly relevant to the assessment of the credibility of the witnesses and weighing of the facts. For example, if a government witness testifies that the Government directed him to make particular "ruse" statements to Defendants in recorded conversations—which the Indictment here specifically acknowledges—or that the Government coached a witness to respond to questions at trial in a particular way, the jury may be offended at the Government's conduct. The jury is nevertheless entitled to hear such evidence, as it impacts the witness's credibility.

### D. <u>Terms of Solis' Plea Deal</u>

The Government argues that nothing about Solis' plea deal should be admitted unless and until he testifies. This motion is utterly innocent of any authority whatever and is plainly wrong. First, the jury cannot be presented the tape recordings Solis made without an understanding of who he is and why he cooperated. To do so would be both confounding and misleading to the jury. Second, the defense intends to call Solis as a witness, and his deal will be squarely on the table. Third, as explained in Mr. Burke's Second Consolidated Motions *in Limine* (Doc. 247 at 7–10) many of the statements that Solis makes on the tapes can only be offered for their truth. Under Fed. R. Evid. 806, that opens the door to the defense to "attack the declarant's credibility. . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness."

For all these reasons, the background of Solis' cooperation and the terms of his plea deal are in bounds at trial.

### E. <u>Uncharged Individuals</u>

This is yet another unfounded motion speculating that counsel for the defense would introduce evidence or make arguments pertaining to prosecutorial decisions to investigate or charge. It should be denied out of hand as unnecessary, improper, and overbroad.

The defense will not attack prosecutorial decisions in this case, but there is a wide gulf between doing that and cross-examining witnesses about potential bias from not having been charged. The defense has uncovered instances in which witnesses were threatened with prosecution for failure to hew to the Government's

theory of the case. Moreover, this is a case about extortion and solicitation and receipt of bribes. Paying bribes is the mirror image of receiving bribes and extortion under color of official right. *United States v. Jenner*, 62 F.3d 1419 (7th Cir. 1995) ("Extortion under color of official right, then, is the flip side of bribery."), and the alleged bribe payors here can clearly be cross-examined as to their bias resulting from not being charged.

Finally, if the Government means in this section of its brief to suggest that the defense cannot present evidence or argue about the decision not to charge Danny Solis, it is clearly wrong for the reasons articulated above. Impeachment of a cooperating witness based on his bias is classic cross-examination. Prohibitions like this are inappropriate and constitute reversible error. *See United Sates ex rel. Dowd v. Lane*, 574 F. Supp. 972, 976 (N.D. Ill. 1983) ("If, in fact, the trial court did completely block defendant's inquiry into the subject of plea bargains, then unquestionably, reversible error occurred."); *see also United States v. Schoneberg*, 396 F.3d 1036, 1042 (9th Cir. 2005) ("Where a plea agreement allows for some benefit or detriment to flow to a witness as a result of his testimony, the defendant must be permitted to cross-examine the witness sufficiently to make clear to the jury what benefit or detriment will flow, and what will trigger the benefit or detriment.").

## III.  Gov't MIL III: Exclude Evidence and Argument Regarding Solis's Other Acts

### A.  Impeachment of Solis Unless and Until He Testifies

The Government moves *in limine* to bar evidence or argument regarding Solis' prior acts and the terms of his plea agreement, unless and until he testifies at trial.

(Gov't Mot. at 14). As stated above, the tape recordings Solis made cannot be presented to the jury absent an understanding of who he is and why he cooperated or else the jury would be left entirely confused and misled. Moreover, contrary to the Government's contention that it "does not intend to introduce any of Solis' statements for their truth, but only to provide *context for Burke's statements on the recordings*" (Gov't Mot. at 15) (emphasis added), many of the statements that Solis makes on the tapes can only be offered for their truth. For example, the Government plans to introduce statements by Solis that cannot possibly be offered for "context for Burke's statements on the recordings" as Mr. Burke does not even respond (Dkt. 247 at 9–10), opening the door for the defense to attack Solis' credibility under Fed. R. Evid. 806. Furthermore, given that the Government will elicit extensive testimony on how it investigated the case, the defense is entitled to challenge the evidence resulting from its investigation, including by pointing out where statements made by Solis were untrue and cross-examining witnesses on Solis and the tapes he made.

For all these reasons, the Court should deny this motion as improper, or at the very least premature, given the need to carefully evaluate the Solis recorded statements that the Government intends to offer for context.

### B. <u>Confrontation Clause and Rule 806 Arguments</u>

The Government argues that Mr. Burke's suggestion that his confrontation rights are violated by the Government's decision not to call Solis is without merit. As the Government notes in its own motion, Mr. Burke does not dispute the settled case law on this issue. Mot. at 19 ("Burke recognizes this settled case law"). What Mr. Burke does dispute is the Government's claim that Solis' statements will only be

offered for their context, which the defense would argue simply cannot be the case for certain of Solis' statements the Government intends to offer. In any event, the defense plans to call Solis as a witness, and will be free to question Solis on these statements.

### C. Defendants May Not Call Solis Solely to Impeach Him

The Government argues that "Defendants should not be permitted to call Solis in their case-in-chief for the sole purpose of impeaching him" and "requests that defendants be required to make a showing of the relevance of any expected testimony from Solis . . . and the good faith basis for defendants' belief that Solis's testimony will assist him save impeachment." (Gov't Mot. at 20–21). Defendants are well aware of what *United States v. Giles*, 246 F.3d 966, 974 (7th Cir. 2001) dictates and have no intention of calling Solis "for the sole purpose of impeaching him." However, Defendants have no obligation under *Giles* to make a proffer of its reasons for calling Solis to the Government. The Government cites to no authority for this proposition and requiring Defendants to do so would impermissibly force the defense to preview their cross examination to the Government.[1]

### IV. Gov't MIL IV: Intent of Uncharged Individuals

The Court should deny the Government's blanket motion to "bar questioning of witnesses concerning whether they believed their conduct was legal or illegal" including asking the alleged extortion victims "Did you think you broke the law by agreeing to give Burke's law firm business?" (Gov't Mot. at 21), because the motion is wholly unsupported given the specific charges at issue, and would improperly restrict

---

[1] Should the Court decide to require a proffer, Defendants respectfully request that they make their proffer *in camera* to limit any prejudice to the defense.

Mr. Burke's Fifth and Sixth Amendment rights to due process, confrontation, and to present his defense.

At the outset, the Government already knows and has identified the fatal flaw to its motion *in limine*: the "[d]efendants may argue that the victims' state of mind is relevant to the [Hobbs Act] extortion count." (Gov't Mot. at 24). Indeed, it is black letter law that the intent and state of mind of an extortion victim is not just relevant, but is an *element* of the offense of extortion.[2] *United States v. Price*, 617 F.2d 455, 459 (7th Cir. 1979) (evidence of the extortion victim's state of mind is an "essential element" of Hobbs Act extortion); *United States v. Fazio*, 2012 U.S. Dist. LEXIS 51147, at *2, 5 (S.D.N.Y. April 11, 2012) (granting government's motion *in limine* to allow evidence as to the states of mind of the alleged extortion victims).

The Government concedes, as it must, that the extortion charges (Counts One, RICO Acts 3(a), 5(a), and Six) require proof of the alleged victim's state of mind, specifically, that the "government must show that 'the victim's fear was reasonable under the circumstances.'" (Gov't Mot. at 24) (quoting William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit, 2022, at 783). *See also United States v. Mitov*, 460 F.3d 901, 907 (7th Cir. 2006) (to support conviction of attempted extortion under 18 U.S.C. §1951, the government must prove reasonableness of the victims' fear).

---

[2] "The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

Anticipating the defense response, but without any legal authority to support its position, the Government tries to distinguish this element of extortion from the evidence it seeks to exclude, arguing that "the focus of this instruction is on whether the victim felt threatened by the defendant's actions" such that "[w]hether or not the victim thought their actions were lawful or unlawful is wholly irrelevant." (Gov't Mot. at 24). But this superficial hairsplitting ignores that an alleged extortion victim's fear is likely to rest substantially, if not in some cases entirely, on the alleged victim's belief that he did, or did not, engage in any illegal conduct with the defendant—particularly in the public corruption sphere in which the whipsaw of the extortion-bribery dichotomy is in play.

The extent to which an alleged extortion victim believes that he has acted innocently (by not engaging in bribery of the defendant), is probative of the reasonableness of the alleged victim's purported fear of the defendant. Put another way, an innocent extortion victim has good cause to fear his extorter, while a collusive bribe payer may not. *See United States v. Coppola*, 671 F.3d 220, 241 (2d Cir. 2012) ("the Hobbs Act leaves open the cause for the fear" that must be proved) (internal quotations and citations omitted).

Tellingly, none of the cases cited in the Government's brief in support of its blanket motion to bar questioning of witnesses concerning whether they believed their conduct was legal or illegal addresses the unique context of extortion. (Gov't Mot. at 21-23).[3] And, the section of the Government's brief addressing extortion

---

[3] Specifically, *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009) is a child pornography case; *United States v. Wantuch*, 525 F.3d 505, 507-08 (7th Cir. 2008) is a conspiracy, bribery,

contains no legal authority whatsoever. (*Id.* at 24). In sum, the Government cannot assert that the Court should bar the defense from questioning the Government's alleged extortion victims concerning their "intent" where the extortion charges *require* proof of the victims' state of mind.

To be clear, counsel do not dispute that there may well be cases or circumstances where it is improper to ask certain witnesses questions about the legality of their conduct. As this Court has explained, the subjective belief of a witness regarding the legality of his or her conduct is usually "irrelevant" to a defendant's knowledge or intent (though there are exceptions, such as in cases where the belief was communicated to the defendant). *Benalcazar*, 2011 U.S. Dist. LEXIS 111453 at *35. However, here the Government has charged Hobbs Act extortion, and defense counsel are entitled to probe the reasonableness of the fear of the extortion victims through questions concerning their beliefs about the propriety of their interactions with Mr. Burke. This evidence is not designed to throw light on the defendant's knowledge or intent—but on an entirely distinct element—the reasonableness of the alleged victims' fear.

---

fraudulent receipt of Alien Registration stamps, and false statements case; *United States v. Baskes*, 649 F.2d 471, 473 (7th Cir. 1980) is a tax avoidance conspiracy case; *United States v. Van Eyl*, No. 02 CR 287, 2004 U.S. Dist. LEXIS 12635, at *1 (N.D. Ill. July 8, 2004) is a wire fraud and false statements case; and, *United States v. Benalcazar*, No. 09 CR 144, 2011 U.S. Dist. LEXIS 111453, at *32 (N.D. Ill. Sept. 29, 2011) is a tax, mail, and wire fraud conspiracy case. The Government does cite *United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015), in which the defendant was charged with extortion, but the government cites it only for the narrow proposition that 18 U.S.C. § 666 does not have a willfulness requirement, and thus mistake of law is not a defense. The defense does not intend to raise a mistake of law defense, so this is inapposite. And in any event, the *Blagojevich* court did not opine on the issue of the intent of charged individuals such as the extortion victims.

Given the Government's arguments, counsel have focused this response on the propriety of eliciting evidence of the intent of the extortion victims. However, extortion is not the only charged offense in which the state of mind of an uncharged individual may be relevant. As set forth more fully below in response to the Government's motion to exclude evidence of the intent of Harry Skydell, the Illinois bribery predicates to the RICO and Travel Act charges similarly require proof of the bribe payor's state of mind, undercutting the Government's arguments.

Finally, the Government seeks "prior notice and a ruling from the Court that in the particular circumstances such evidence is relevant and admissible." (Gov't Mot. at 24). The Government cites no authority for this request, and the Court should deny it.

For all of these reasons, the Court should deny the Government's blanket motion to "bar questioning of witnesses concerning whether they believed their conduct was legal or illegal." (*Id.* at 21).

## V.     Gov't MIL V: Evidence of Harry Skydell's Intent

The Government has moved to exclude evidence of the intent of Harry Skydell, the principal of 601W, which owned the Old Post Office. That motion fails to acknowledge the Illinois bribery law's requirement that the defendant alleged bribe-recipient act "pursuant to an understanding" with the alleged bribe-payor. It should be denied.

Among the alleged racketeering acts and Travel Act predicates, the Government alleges that Defendant Burke's dealings with Skydell constitute state-

14

law bribery in violation of 720 ILCS § 5/33-1(e). (*See* Superseding Indictment at 29–31, 40–41, Dkt. 30). Under that statute,

> A person commits bribery when:
>
> . . .
>
> (e) He or she solicits, receives, retains, or agrees to accept any property or personal advantage *pursuant to an understanding* that he or she shall improperly influence or attempt to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness.

720 ILCS § 5/33-1(e) (emphasis added). The requirement that the payment be "pursuant to an understanding" means that "there was a meeting of the minds with regard to what the money was for." *See People v. Gralewski*, 132 Ill. App. 2d 755, 757 (1971). Clearly, a belief about the existence of a meeting of minds implicates Skydell's state of mind and is therefore both an element of proof that the Government must satisfy and a proper defense for Mr. Burke.

In the teeth of the plain language of the statute, requiring that the defendant act "pursuant to an understanding," the Government seeks to bar evidence of Skydell's intent while citing no authority whatsoever for the proposition that the alleged bribegiver's intent is irrelevant to 720 ILCS § 5/33-1(e). *See United States v. Morgan*, 635 F. App'x 423, 428-32 (10th Cir. 2015) (addressing 18 U.S.C. § 666, not Illinois bribery); *United States v. Ring*, 706 F.3d 460, 467–68 (D.C. Cir. 2013) (addressing 18 U.S.C. § 201, not Illinois bribery); *United States v. Avenatti*, 432 F. Supp. 3d 354, 364 (S.D.N.Y. 2020) (addressing honest services fraud, not Illinois bribery). In fact, the Government's only authority dealing with Illinois bribery at all, *United States v. Hocking*, 860 F.2d 769, 778 (7th Cir. 1988), deals only with

subsection (d), which does not require the act be pursuant to an understanding, and does not hold—or even suggest—that the bribegiver's intent is not relevant. To the contrary, *Hocking* plainly states that a conviction under subsection (d) requires proof that the bribe payors "paid money to [the defendant] with the intent of influencing an act related to his public employment." *Id.*

There was a time when the counterparty's intent was irrelevant to Illinois bribery, but that time has long passed. In *People v. Lyons*, 4 Ill. 2d 396, 400–01 (1954), the Illinois Supreme Court held that "to constitute the crime of bribery [under the then-current Illinois statute], there need not be mutual intent on the part of both the giver and the accepter. It is enough that the person accused had the guilty intent." The version of the statute in force in *Lyons* did not require that the defendant act "pursuant to an understanding." *See id.* at 398–99 (reciting then-current statutory language). Against the backdrop of *Lyons*, the Illinois legislature amended the bribery statutes to require proof of the counterparty's intent in both subsection (d), as acknowledged in *Hocking*, 860 F.2d at 778, and subsection (e), as acknowledged in *Gralewski*, 132 Ill. App. 2d at 757.

Accordingly, under the current version of 720 ILCS § 5/33-1(e), Skydell's state of mind is directly relevant to whether Defendant Burke acted "pursuant to an understanding," and the Government's motion should be denied.

## VI.   Gov't MIL VI: Preclude Opening Statements Regarding the Applicable Law

This is yet another improper motion *in limine*. The defense is well aware of the purpose of opening statements and will comply with the rules. There is no basis to

suggest otherwise, and the motion should be denied.

## VII.  **Gov't MIL VIII: "Jury Nullification"**

The Government next seeks to exclude argument or evidence that, in the Government's characterization, purportedly "elicit[s] jury nullification"—which the Government defines as evidence concerning (A) "Politics as Usual," (B) "Penalties Faced by the Defendants if Convicted," (C) "Golden Rule' Arguments." (Gov't Mot. at 30–31). This motion is unnecessary and should be denied. Defendants reiterate that they intend to abide by the law—here, by not encouraging jury nullification—so motions *in limine* purporting to enforce the Rules are needless and moot.

The Government's motion actually goes far beyond simply asking that Defendants be barred from seeking jury nullification (which Defendants will not do in any event) and instead uses the concern over such arguments as a pretext to bar relevant, material evidence. The Court should not grant the Government's backdoor attempt to prevent Defendants from challenging the Government's case and advancing their theory of defense.

### A.  **"Politics as Usual"**

In Part A of its motion, the Government seeks to prevent Defendants from suggesting to the jury that illegal conduct is "proper, necessary, or simply the way of life in politics." (Gov't Mot. at 30). To the extent the Government's motion seeks to exclude actual jury nullification arguments, meaning arguments that "encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts," *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983), no order is

17

necessary because Defendants will not present such arguments or argue that illegal conduct is permissible.

Defendants do intend, however, to offer relevant, material, and admissible evidence regarding typical practices surrounding petitioning the Government, constituent service, political fundraising (if raised by the Government) and governmental processes and procedures for permissible purposes central to their constitutional right to present a defense including, *inter alia*, negating the elements of corrupt intent or willfulness. Such argument would not be encouraging jury nullification, and it should not be barred under a broad prohibition on evidence regarding "Politics as Usual."

## B.   Penalties Faced by Defendants if Convicted

In Part B of its motion, the Government seeks to prevent Defendants from presenting arguments or evidence concerning the potential penalties that Defendants face if convicted. (Gov't Mot. at 30–31). Defendants acknowledge that "the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored," (Gov't Mot. at 30) (quoting *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997)). Defendants will not be arguing their possible punishments to the jury. However, "there is no 'absolute prohibition' on exposing the jury to sentencing consequences" if done for a purpose other than jury nullification. *United States v. Manzano (In re United States)*, 945 F.3d 616, 630 (2d Cir. 2019) (quoting *Shannon v. United States*, 512 U.S. 573, 588 (1994)). *See, e.g.*, *United States v. Sanders*, No. 2:08-CR-22 JVB, 2011 WL 134083, at *1 (N.D. Ind. Jan. 14, 2011) (permitting defendant "to explore Scott's possible motive for fabricating his testimony by inquiring about

the difference in the penalties he faced before and after his plea agreement"), *aff'd*, 708 F.3d 976 (7th Cir. 2013).

### C.   "Golden Rule" Arguments

In Part C of its motion, the Government seeks to exclude "any argument that the jury should place itself in the defendants' shoes." (Gov't Mot. at 31). This boilerplate language is vague because it does not address specific evidence. *See Shotts*, 2018 WL 4832625, at *2 (finding that "the Court cannot make any meaningful ruling" with respect to "any Golden Rule testimony or argument" "because no particular evidence or argument is presented in the parties' briefing on this issue"). To the extent that this Motion seeks only to enforce the Federal Rules of Evidence as interpreted through binding authority, it is unnecessary; to the extent it seeks to bar something additional, the Government has not explained what that is or why it is entitled to such relief. Either way, the Government's motion should be denied.

## VIII.  Gov't MIL IX: Exclude Questions and Comments on Contents of Unplayed or Unrecorded Conversations

The Government's motion to "bar the defendants from asking questions or making comments that invite juror speculation regarding the existence or content of recordings or portions of recordings not played at trial" (Gov't Mot. at 32) should be denied as vague, overbroad, and improper. Defendants do not intend to argue that recorded conversations that neither side chooses to play contain affirmative exculpatory information. However, Defendants are entitled to reference the voluminous recordings and the extended period that the Government surveilled Mr. Burke's communications to demonstrate that the Government spared no effort to

secure clear evidence of criminality but failed to do so. Furthermore, Defendants are entitled to comment on the absence of evidence in unplayed recordings, including by arguing that the recordings that the Government does not play at trial do not contain admissible information incriminating Defendants, or else the Government would have played them. *See, e.g.*, *United States v. Thompson*, 37 F.3d 450, 454 (9th Cir. 1994) ("Because evidence comes in various forms, some stronger and some weaker, a defendant is entitled to argue to the jury that the government's failure to present a particular type of strong evidence against her . . . weakens its case."); *United States v. Hoffman*, 964 F.2d 21, 26 (D.C. Cir. 1992) ("It is permissible for a defense attorney to point out to the jury that no fingerprint evidence has been introduced and to argue that the absence of such evidence weakens the Government's case...."); *United States v. Latimer*, 511 F.2d 498, 502–03 (10th Cir. 1975) (holding that defense counsel may comment on government's failure to introduce surveillance tapes of bank robbery for which appellant was charged).

The one case that the Government cites to in favor of its motion, *Berry v. Deloney*, is inapposite. There, the Seventh Circuit upheld the district court's ruling precluding plaintiff's counsel from admitting evidence relating to a party's failure to produce a report sought by counsel in a pre-trial subpoena, finding that such evidence "would have merely invited the jury to speculate that [the defendant] suppressed evidence helpful to the plaintiff." *Berry v. Deloney*, 28 F.3d 604, 609 (7th Cir. 1994). Precluding argument that a party suppressed evidence helpful to the defense is far

different from precluding argument about how the absence of certain evidence weakens a party's case. Accordingly, this motion should be denied.

## IX. Gov't MIL X: Exclude Evidence of Defendants' Prior Good Conduct or Lawfulness

The Government seeks a complete bar by defendants from "presenting evidence of, or making reference to, lawfulness, non-corrupt conduct, and prior good acts, except reputation or opinion evidence offered by character witnesses" in accordance with Fed. R. Evid. 405(a). (Gov't Mot. at 33).

As an initial matter, defense counsel know the evidentiary rules concerning reputation and opinion evidence offered by character witnesses. The Court need not enter an order which simply recites the strictures of Fed. R. Evid. 405 (*Linkepic*, 2019 WL 11717160, at *1), particularly where the Government does not point to specific evidence it seeks to exclude. For this reason alone, the Court should deny the Government's motion.

But more importantly, the Government's broad motion ignores the body of law in this circuit which clearly provides for the admission of certain evidence concerning lawful, non-corrupt conduct by a defendant which is neither character evidence, nor evidence designed to demonstrate that "because they performed good acts during their lives, they could not have committed the charged offenses." (Gov't Mot. at 33). *See e.g., United States v. LeFevour*, 798 F.2d 977, 980 (7th Cir. 1986) (finding, contrary to the government's "misdirected" arguments, that there was "nothing wrong" with the argument that a defendant-judge charged with bribery had a practice

of dismissing tickets on request, in order to lay a foundation for his principal defense that he was not influenced by the receipt of a bribe).

For example, in *United States v. Shields*, the district court denied in part a similar government motion to wholly preclude the defendants from offering evidence of any lawful, non-corrupt conduct by the defendants on occasions not covered by the indictment. No. 90 CR 1044, 1991 WL 236492, at *2 (N.D. Ill. Aug. 13, 1991). After carefully parsing the caselaw, including the Seventh Circuit's decision in *LeFevour*, the district court found that while evidence that a defendant acted lawfully on other occasions was not admissible to prove that the defendant acted lawfully on the occasions referenced in the indictment, the defendant *could* introduce certain testimony concerning his prior conduct for another purpose.

Specifically, the district court found that the defendant in *Shields*—a judge charged with accepting bribes from an attorney in exchange for favorable treatment in a case before him—could offer evidence that it was his custom to meet with lawyers in his chambers, because it was a "customary practice which would cast an innocent explanation upon conduct which the government portrays as evidence of wrongdoing." *Id.*

The defendant in *Shields* also sought to introduce evidence that he had ruled similarly in cases comparable to the case he allegedly influenced improperly pursuant to a bribe. *Id.* While the district court ultimately found that the theory articulated by the defendant was not supported by the evidence, the court found that *if* the evidence tended to establish a custom or routine of handling cases a given way, such evidence

could be admissible to rebut the government's case. *Id. See also*, *United States v. Finley*, 708 F. Supp. 906, 914 (N.D. Ill. 1989) (to obtain admission of evidence of prior non-corrupt acts, the party seeking to admit the evidence must articulate a theory of how their engagement in those "non-corrupt transactions shows that they are not guilty of the offenses charged in the indictment").

Indeed, in the oral ruling cited by the Government in *United States v. McClain et al.*, 20 CR 812 (N.D. Ill.) (Leinenweber, J.) (attached to the Gov't Motion as Ex. B), the district court declined to grant in full the government's motion to limit testimony and evidence related to the defendants' character traits and habits, finding that the defendants could introduce evidence regarding "habits" within the confines of Fed. R. Evid. 406—which aligns with the decisions in *LeFevour*, *Finley*, and *Shields*, set forth above.

Because the Government's broad motion runs headlong into an established body of law, and is otherwise premature and unmoored from any concrete issues or evidence in the case, the Court should deny the Government's motion. *See United States v. Fazio*, 2012 U.S. Dist. LEXIS 51147, at *16 (S.D.N.Y. Apr. 11, 2012) (denying as premature the government's pretrial motion *in limine* to preclude the admission of all acts of good deeds by the defendants).

## X.  Gov't MIL XI: Exclude Evidence of Witnesses' Bad Acts

Without citing a single piece of evidence or a single bad act, the Government asks that this Court issue a blanket order that defense counsel abide by Rule 608 and not ask witnesses about bad acts that do not fall within that rule. (Gov't Mot. at 39). Again, simply seeking to enforce the Rules of Evidence is not the proper basis of a

motion in *limine*. *See LinkEpic*, 2019 WL 11717160, at *1. Defendants understand the rules and law applicable to use of prior "bad acts" evidence, including Rule 608, and will act in compliance with the law.

The Government has also failed to establish either any legal basis nor any compelling need for the Court to grant its companion request requiring Defendants to provide it with advance notice of impeachment topics. *United States v. Barton*, No. 1:19-cr-00733, 2021 WL 3800171, at *10 (N.D. Ill. Aug. 26, 2021) ("[T]here is no requirement of pretrial notice for Federal Rule of Evidence 608(b), neither in its text nor any case law interpreting it."); *United States v. Patel*, No. 01 CR 716, 2002 WL 1750948, at *2 (N.D. Ill. July 18, 2002) ("Rule 608(b) does not require pretrial disclosure of any evidence which might be used for impeachment purposes."); *United States v. Messino*, 855 F. Supp. 955, 965 (N.D. Ill. 1994) ("This court has previously held that defendants generally are not entitled to special pretrial notice of the introduction of Rule 608(b) evidence, and the court reaffirms that holding for the reasons then given.") (citing *United States v. Sims*, 808 F. Supp. 607, 611 (N.D. Ill. 1992)).

Under the Rules of Evidence, the Government is not entitled to a "sneak peek" of Defendants' impeachment evidence before cross-examination. As held by one judge in this District, the "court will not require defendant to proffer evidence of prior bad acts probative of truthfulness or untruthfulness, as requested by the government, before using the acts to cross-examine [the witness]." *United States v. D'Arco*, No. 90 CR 1043, 1991 WL 264504, at *6 (N.D. Ill. Oct. 24, 1991). To require the defense to

preview its cross-examination would undermine the truth-seeking function of a trial, because vigorous cross-examination is "beyond any doubt the greatest engine ever invented for discovery of truth." *Watkins v. Sowders*, 449 U.S. 341, 349 n.4 (1981) (citing 5 J. Wigmore, Evidence § 1367, p. 32 (J. Chadbourn rev.1974)).

Accordingly, the Government's motion should be denied.

## XI. Gov't MIL XII: Motion to Preclude Discovery Requests or Commentary in Presence of Jury

This is yet another baseless request for an order that Defendants follow the law. There is no more reason to think that the defense counsel will do so than to think that the Government would do so. It should be denied.

## XII. Gov't MIL XIII: Preclude Comment on Evidentiary Rulings

The Government pretends to fear that the defense will either "refer to excluded evidence" or "otherwise comment[] on" the Court's evidentiary rulings. This is another one of those rote requests that counsel follow the law. It is ridiculous to suppose that any of the defense counsel in this case would do either of those things, and is a waste of time and resources. It should be denied as unnecessary.

## XIII. Gov't MIL XIV: Motion to Exclude Missing Witnesses

Seeking a fig leaf for its apparent decision not to call at trial the two key witnesses at the heart of the Post Office episode bribery charges—Solis and Harry Skydell—the Government asks the Court to bar Mr. Burke from making missing witness arguments. (Gov't Mot. at 42-43). Defense counsel know the law concerning missing witnesses and agree that, should those issues arise at trial, the defense will notify the Court before presenting such arguments to the jury. However, counsel note

that if the Government chooses not to call a witness, thereby requiring the defense to call that witness, under those circumstances the defense is free to argue any relevant inferences flowing from the Government's decision not to call the witness. This kind of argument is not a "missing witness" argument because the witness ultimately testifies—obviating the concerns expressed in the missing witness cases cited by the Government regarding improper jury speculation about non-testifying witnesses. For these reasons, the Court should deny the Government's motion as premature, and take up any missing witness issues as those issues arise at trial.

## XIV.  **Gov't MIL XV: Preclude Reasonable Doubt Definition**

The defense knows the law as well as the Government and has no intention of defining reasonable doubt for the jury.

## XV.  **Gov't MIL XVI: Recall Government Witnesses**

The defense has no objection to the *reasonable* recalling of law enforcement agents. But how the Government intends to execute that remains to be seen, and the Court cannot properly evaluate this motion in a vacuum and pretrial. As to non-governmental witnesses, the Court may want to find out who the witnesses are and whether recalling them makes sense or creates a needless waste of time.

## XVI.  **Gov't MIL XVII: Preclude "Use" of Agent Reports**

The Government's motion to preclude "use" of agent reports during cross-examination, if taken literally, would undermine at least decades of unquestioned practice in the federal courts and constitute a per se violation of Defendants' Sixth Amendment right to confront the witnesses against them. The Government conflates the *use* of an agent's report for cross-examination (wholly proper) with *admission* of

an agent's report as substantive evidence (not permitted except in defined circumstances). The motion should be denied, and Defendants' counsel should be permitted to use FBI 302s both to impeach and to refresh recollection during cross-examination of government witnesses.

"A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness." *United States v. Hale*, 422 U.S. 171, 176 (1975). The FBI 302s reflect (accurately, one hopes) oral statements made by the various witnesses to the agents preparing the 302s. The 302s may or may not themselves be substantively admissible, but there is no rule, statute, or decision barring the use of 302s to cross-examine witnesses about prior, inconsistent, oral statements reflected in the 302s.

Such impeachment is consistent with both the Federal Rules of Evidence and has been the practice of the courts in this circuit and elsewhere time out of mind, as recognized by the Government's own authorities. *See United States v. Adames*, 56 F.3d 737, 744–45 & n.4 (7th Cir. 1995) (noting that the trial court "insist[ed] that impeachment be in accordance with the Federal Rules of Evidence" in having counsel complete his impeachment of the witness by calling the agent who prepared the report); *United States v. Lewis*, 954 F.2d 1386, 1392–93 (7th Cir. 1992) (affirming admission of 302 as agent's recorded recollection under Rule 803(5)); *United States v. Davis*, 845 F.3d 282, 289–91 (7th Cir. 2016) (affirming district court's decision to permit government to impeach witness with inconsistent statements reflected in 302s). Defendant's counsel should be allowed to impeach government witnesses using

302s consistent with the Federal Rules of Evidence. Simply put, when a witness makes a statement on the stand that it is inconsistent with what the agent has put in her report that the witness said previously, the questioner is entitled to ask questions based on the prior assertions and to ask whether the witness told the FBI those facts on a specified occasion. That is a proper use of the FBI 302.

The Government's assertion that a prior inconsistent statement must be "made or adopted" by the witness to be used for impeachment under Rule 613 is simply mistaken. The requirement that a statement be made or adopted by the witness is specific to the substantive admission of the statement for its truth as a recorded recollection under the hearsay exception of Rule 803(5)—the provision at issue in *United States v. Schoenborn*, 4 F.3d 1424, 1427–29 (7th Cir. 1993), relied upon here by the Government. A similar requirement is imposed by the Jencks Act. *See* 18 U.S.C. § 3500(e). But Rule 613 includes no such requirement, and the only definition of "statement" in the Federal Rules of Evidence includes "a person's oral assertion." Fed. R. Evid. 801(a); *see also United States v. Praetorius*, 622 F.2d 1054, 1065 (2d Cir. 1979) (applying Rule 801's definition to Rule 613 because "[t]he only definition of 'statement' to be found in the Federal Rules is the definition in Rule 801(a)"). "An oral statement—in itself—obviously cannot be 'signed' or 'adopted', and it would be illogical (and, indeed, bizarre) to bar the use of a prior oral statement for impeachment *because* there happened to be written evidence of it. There can therefore be no requirement that a prior oral statement, which happens to have been recorded in writing, have been 'adopted' by a witness prior to its use for impeachment

in the witness's examination." *Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 442 (D.C. Cir. 1994).

The upshot is that a witness may be impeached on cross-examination through questioning about a prior, inconsistent, oral statement reflected in a 302. Extrinsic evidence of the prior inconsistent statement may be admitted under Rule 613(b) through testimony of the agent who prepared the 302. A 302 is a statement of the agent who prepared it, and if the agent herself does not recall the interview on the stand, or denies the facts contained in the agent's statement, the 302 itself can be admitted under Rule 613(b), or as the agent's (not the original witness's) recorded recollection under Rule 803(5).

Moreover, defense counsel is permitted to use 302s to refresh witnesses' recollections consistent with Rule 612. "The Federal Rules of Evidence permit witnesses to use reports to refresh their recollection." *United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997). "Anything, even inadmissible evidence, can be used to refresh a witness' recollection," *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 79 F.4th 1262, 1275 (10th Cir. 2023), and courts routinely permit the use of 302s to refresh recollection. *See, e.g.*, *id.*; *United States v. Brown*, 303 F.3d 582, 588–89 (5th Cir. 2002) (witness used 302 to refresh recollection even though 302 was not admitted into evidence); *United States v. Cheyenne*, 558 F.2d 902, 904–05 (8th Cir. 1977) (approving use of 302 to refresh witness's recollection at suppression hearing); *United States v. Torres-Galindo*, 206 F.3d 136, 137 (1st Cir. 2000); *United*

*States v. Amato*, No. 03-CR-1382 (NGG), 2006 WL 1891113, at *4–5 (E.D.N.Y. June 27, 2006) (counsel used 302s and agents' notes to refresh witness's recollection).

The Government's request for an order categorically barring the use of 302s during cross-examination lacks any basis in law and should be denied.

Dated: October 13, 2023

Respectfully Submitted,

**JENNER & BLOCK LLP**

By: */s/ Charles B. Sklarsky*
    Charles B. Sklarsky
    Kimberly Rhum
    353 N. Clark Street
    Chicago, IL 60654
    Tel: (312) 222-9350
    csklarsky@jenner.com
    krhum@jenner.com

**LOEB & LOEB LLP**

By: */s/ Joseph J. Duffy*
    Joseph J. Duffy
    Robin V. Waters
    321 N. Clark Street, Suite 2300
    Chicago, IL 60654
    Tel: (312) 464-3100
    jduffy@loeb.com
    rwaters@loeb.com

**GAIR EBERHARD NELSON DEDINAS LTD**

By: */s/ Chris Gair*
    Chris Gair
    Blake Edwards
    1 East Wacker Drive, Suite 2600
    Chicago, IL 60601
    Tel: (312) 600-4901
    cgair@gairlawgroup.com
    bedwards@gairlawgroup.com

*Attorneys for Edward M. Burke*