IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>EDWARD M. BURKE, PETER J. ANDREWS, and CHARLES CUI,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>) No. 19 CR 322<br>)<br>) Judge Virginia M. Kendall<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Burke moves to exclude testimony by Professor Constance A. Mixon, Ph.D., the Government's proposed expert witness on Chicago government and politics. (Dkts. 238, 261). The Court held a hearing on the motion on October 31, 2023. For the following reasons, the motion is denied.

**BACKGROUND**

The Court assumes familiarity with the facts and posture of this case. (*See* Dkts. 196, 287, 301). For context, on May 30, 2019, a grand jury returned a Superseding Indictment charging Defendant Edward Burke, his associate Peter Andrews, and businessman Charles Cui in nineteen corruption-related counts. (Dkt. 30). Burke is the longest-serving member of Chicago's City Council, assuming his position in 1969. (Dkt. 196 at 2). The Indictment alleges that Burke exploited his authority as the Alderman of Chicago's Fourteenth Ward and Chairman of the Committee on Finance to gain business for his law firm, Klafter & Burke, in exchange for securing official favors such as lucrative tax breaks and permits from the City of Chicago. (Dkt. 30 ¶¶ 1g–

1

h, 4; Dkt. 196 at 1). The charges focus on four episodes between 2016 and 2018 where Burke allegedly exploited his position on the Chicago City Council. (*See* Dkt. 30).

The Government retained Professor Mixon to provide expert testimony regarding the operation of the Chicago City Council. (Dkt. 261 at 2). Burke moved *in limine* to exclude Professor Mixon's expert testimony on the grounds that she is not qualified and that the Government failed to carry its burden to show her testimony is both relevant and reliable. (Dkt. 238). On October 31, 2023, the Court held a hearing on the motion. (Dkt. 314).

## LEGAL STANDARD

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "govern the admissibility of expert testimony." *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 871 (7th Cir. 2021) (citation omitted). Trial judges act as gatekeepers to screen expert testimony for relevance and reliability. *Daubert*, 509 U.S. at 589; *see also C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). Under Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. Thus, "the key to the gate is not the ultimate correctness of the expert's conclusions but rather the soundness and care with which the expert arrived at her opinion." *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 826 (7th Cir. 2021) (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)) (cleaned up).

District courts apply *Daubert* flexibly, consistent with this Court's gatekeeping function. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Employing a three-part analysis, the Court determines: (1) "whether the witness is qualified;" (2) "whether the expert's methodology is . . . reliable;" and (3) "whether the testimony will assist the trier of fact to understand the evidence or determine a fact in issue." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (cleaned up). The expert's proponent bears the burden of demonstrating that the testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment. If the Court determines that an expert's testimony is admissible, "any questions or problems concerning the expert's opinion and testimony may be thoroughly explored during the cross-examination of the expert witness." *United States v. Perez*, 612 F.3d 879, 886 (7th Cir. 2010).

## DISCUSSION

The Government retained Professor Mixon to provide expert testimony regarding the operation of the Chicago City Council, the role that Alderpersons play within their geographic wards, and how requests for action are handled by the Council and the Finance Committee. (Dkt. 261 at 2–3). Defendant Burke seeks to bar Professor Mixon's testimony on the grounds that she is not qualified and that the Government failed to carry its burden to show her testimony is both relevant and reliable. (Dkt. 238).

I.  **Professor Constance Mixon**

   A.  **Professor Mixon's Qualifications**

"Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter

3

of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (quoting *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)). Professor Mixon is a political science professor and the Director of the Urban Studies Program Elmhurst University. (Dkt. 261-1). She holds a Bachelor of Arts in politics from Cornell College and a Master of Public Administration and Ph.D. in political science from the University of Illinois at Chicago. (*Id.*) Her focus is on "urban government," particularly in Chicago. (Dkt. 238-1 at 2). Prior to joining the faculty at Elmhurst University, Professor Mixon taught at the City Colleges of Chicago. (Dkt. 261-1). In total, Professor Mixon has been teaching political science in the Chicagoland area for over 25 years. (Dkt. 238-3 at 2–3). Professor Mixon has also published several book chapters, journal articles and serves as the co-editor of *Twenty-First Century Chicago*, the "primary textbook" on Chicago society and politics. (Dkt. 261-1 at 2). At the hearing, Professor Mixon noted she also attends City Council meetings, researches its operations, reads the City Council's Journals of the Proceedings,[1] and stays up to date with other materials relevant to the political science profession, such as news reports, investigative reports, standardized texts, and scholarly articles.

Defendant Burke does not challenge Professor Mixon's credentials but takes issue with Professor Mixon's "exaggerations in her CV," such as certain "peer-reviewed" book chapters. (Dkt. 238 at 5, 11–12). Professor Mixon's 25-page Curriculum Vitae includes various academic papers under the title "Peer-Reviewed Academic Conference Papers." (Dkt. 238-3 at 7). At the hearing and in his motion, Burke drew attention to a previous draft of her CV, where Professor Mixon placed three chapters from her book *Twenty-First Century Chicago* under this category when they were not in fact peer-reviewed; but rather reviewed by her co-editors. Professor Mixon

---

[1] The Journal of the Proceedings is the "official record" of City Council meetings and reflects all actions occurring during such meetings. *See Journal of the Proceedings*, OFFICE OF THE CITY CLERK, https://www.chicityclerk.com/legislation-records/journals-and-reports/journals-proceedings (last visited Nov. 1, 2023).

4

became aware of these discrepancies from Burke's *Daubert* challenge and explained that she has corrected her CV after this was brought to her attention and that she "misclassified" the chapters but had accurately classified the book as not peer-reviewed. The Government contends this was a clerical error and does not "demonstrate the type of credibility concerns that defendants seems to suggest." (Dkt. 261 at 14). Burke perceives this error goes to her reliability as an expert. (Dkt. 238 at 13).

The Court finds that Professor Mixon is qualified to provide expert testimony as to operations of the Chicago City Council from 2015 to 2019, including the (1) structure and rules governing the City Council; and (2) roles and responsibilities of Chicago Alderpersons, given her academic credentials and extensive experience of teaching, researching, and studying the topics at hand. *Trs. of Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir. 2007) ("[W]hile extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience.") (internal quotation marks omitted).

Burke's issues with Professor Mixon's CV errors go to the weight of her testimony, not her qualifications or admissibility. To the extent that Burke would like to challenge Professor Mixon's credibility based on the misclassified book chapters, he may do so on cross examination. *See, e.g.*, *Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 3643682, at *3 (N.D. Ill. Aug. 23, 2012) ("[T]he trial court's role as gatekeeper is not intended to replace cross-examination and the presentation of conflicting evidence as traditional mechanisms for highlighting weaknesses in the expert's testimony.").

B.     Reliability of Professor Mixon's Methodology

Reliability "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013). The test for reliability is "flexible," and the factors enunciated in *Daubert* "neither necessarily nor exclusively appl[y] to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. Moreover, expert testimony is not unreliable, "simply because it is founded on [a witness's] experience rather than on data." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Here, Professor Mixon's proposed expert testimony could be found reliable based solely on her experience and credentials: her specialized expertise in the structure and operations of Chicago's City Council is based on over 25 years of study, academic research and writing, teaching, and observation of the City Council.

As outlined in the hearing, Professor Mixon's methods in preparing her proposed expert testimony include using her own experience and knowledge, studying operations of the City Council, reading reports on the City Council, observing over 40 meetings of City Council, and then applying her academic expertise to synthesize and decipher this information to present to students and in written publications. Professor Mixon used these methods to prepare presentation slides on "Chicago's City Council," (Dkt. 238-2), and updated them using news reports, rules, procedures, and the City of Chicago's own sources on its website.

Using these available records, information, and her own experience and academic expertise is a reliable methodology in political science and appropriate to the facts of this case. *See, e.g.*, *Ill. Liberty PAC v. Madigan*, No. 12 C 5811, 2015 WL 5589630, at *4 (N.D. Ill. Sep. 21, 2015) ("Unlike scientific or technical experts . . . a political scientist's testimony (political science is not

6

'science' for Rule 702 purposes) cannot be so mechanically scrutinized."); *Potts v. Manos*, No. 11 CV 3952, 2017 WL 4365948, at \*5 (N.D. Ill. Sept. 29, 2017) ("A witness who offers expert testimony based on his experience must connect his experience to the facts of the case in order to meet the standard for reliability under Daubert and the Federal Rules of Evidence.").

  C. **Relevance of Professor Mixon's Opinions**

Lastly, "[a]n expert's testimony qualifies as relevant under Rule 702 so long as it assists the jury in determining any fact at issue in the case." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal citation omitted). The Rule 702 standard for relevance also incorporates the Court's obligations under Rule 403 to "determine the total effects of proposed evidence, weighing its probative value against its potential to (among other things) confuse the jury." *United States v. Schiro*, 679 F.3d 521, 529 (7th Cir. 2012).

Professor Mixon's proposed expert testimony would be used primarily to educate the jury. *See United States v. Gan*, 54 F.4th 467, 477–78 (7th Cir. 2022) (finding that a law enforcement expert may explain "the methods and jargon" in "unfamiliar" criminal enterprises). In fact, educational expert testimony can be proper under Rule 702 "when it helps the jury to understand the evidence." *Id.* at 474 (internal quotations omitted). What matters is whether the testimony is "helpful." *Id.* at 475. Here, Professor Mixon's proposed expert testimony is undeniably so.

Professor Mixon's proposed expert testimony regarding the structure and rules of the City Council and the roles and responsibilities of Alderpersons is particularly useful and relevant to jurors in this complex case. Professor Mixon will be primarily explaining the operations of Chicago's City Council to an audience similar to the students she teaches, who have no daily knowledge of the operation of the City Council. (*See* Dkt. 261 at 6). Her testimony is, in essence,

7

"a civics lesson in Chicago government." (*Id.* at 6). As discussed in the hearing, most Chicagoans do not know their Alderperson and what ward they live in, and are unfamiliar with city government operations. It is not a stretch to posit that most jurors, many of whom do not live in the City of Chicago but in the 17 other counties from which this Court pulls its jurors, are unfamiliar with the basics of the Chicago City Council. Professor Mixon will provide those basics and the framework to process the evidence presented. The structure of Chicago's City Council is not inherently understood through common sense; nor does it parallel that of other large municipalities. Jurors need the basic information about the structure and processes of Chicago's City Council to put into context the facts that they will be discerning.

Moreover, at the hearing, Burke argued that Professor Mixon's proposed expert testimony is not relevant as it primarily relates facts rather than opinions. Professor Mixon does not need to reach an opinion for her testimony to be "helpful" or "assist the trier of fact." *Daubert*, 509 U.S. at 491; Fed. R. Evid. 702 advisory committee's note to 2000 amendment. In fact, Professor Mixon's lack of opinion belies the possible prejudice for Burke. Rather than replacing the jurors' conclusions by reaching her own and placing an expert's imprimatur upon them, Professor Mixon is merely providing information from which the jurors may reach their own conclusions. This limitation significantly lessens any prejudice that Mixon's testimony will have.

Burke cites *United v. McClain*, a recent case in which a court in this district excluded testimony from a political scientist, since no "expert can waltz into the courtroom and render *opinions* not based upon a recognized method." No. 20 CR 812, 2023 WL 2403137, at *2 (N.D. Ill. Mar. 8, 2023) (quotations omitted) (emphasis added). First, as established above, the Court finds Professor Mixon's proposed expert testimony reliable. Further, as Burke pointed out in the hearing, Professor Mixon is not providing an opinion, nor is she putting an "'expert gloss' on

8

conclusions the jurors are capable of seeing for themselves." *Id.* at *3. Rather, as discussed above, she provides relevant, helpful information to the jury. The Court finds no prejudice.

Finally, Professor Mixon's testimony also would include possible testimony regarding Burke's reputation as the "Dean" and "unofficial parliamentarian" of the City Council. (Dkt. 261 at 8 n.5). Burke argues Mixon's anticipated testimony characterizing Burke as the "Dean" or "parliamentarian of the City Council" would be improper testimony on Burke's reputation or state of mind. (Dkt. 238 at 8 (citing Fed. R. Evid. 405(a), 704(b)).

The Court finds Professor Mixon's anticipated testimony that Burke has been referred to as the "Dean" or "parliamentarian of the City Council," is not improper. As stated in the hearing, Professor Mixon would be basing her testimony on her experience and training as a political scientist. *See Garcia-Avila*, 737 F.3d at 489. These terms are not Professor Mixon's opinion, nor are they based on Burke's specific mental processes, but are two terms from her experience following Chicago politics for the last 25 years, combined with observations that many political scientists in her field have used that term to refer to Burke over the 50 years in which he served as an Alderperson. The Court fails to see how these two phrases commenting on Burke's long knowledge of City Council procedure and operations are unfairly prejudicial. Even so, outside of these terms, the Court directs the Government not to elicit testimony regarding Burke's reputation or Professor Mixon's opinion of that reputation. Without that line of testimony, Professor Mixon's testimony will be helpful to the jury's understanding of the operation of Chicago's government and City Council.

## **CONCLUSION**

For the reasons above, Defendant's motion to exclude Mixon's testimony [238] is denied.

Virginia M. Kendall
United States District Judge

Date: November 2, 2023