**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 322 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| EDWARD M. BURKE, | ) | |
| PETER J. ANDREWS, and | ) | |
| CHARLES CUI | ) | |

**DEFENDANT BURKE'S MOTION FOR MISTRIAL**

Defendant, **EDWARD M. BURKE**, by and through his undersigned attorneys, respectfully moves this Court pursuant to the Due Process and Double Jeopardy Clauses of the Fifth Amendment to the Constitution of the United States, to declare a mistrial based on the Government's conduct in eliciting inadmissible and deeply prejudicial testimony from witness Ray Lang that "hiring an alderman to do property tax work" is "symbolic of the Chicago way of doing business" and is "very corrupt." This testimony from Mr. Lang—which the Government *promised* in pretrial filings that it would not elicit—violated the Court's pretrial ruling and put incurably prejudicial opinion testimony on *the* critical, ultimate issue in the case before the jury. The Court should declare a mistrial, and further conduct a hearing in order to ascertain the extent of the deliberateness of the conduct.

**I.     LEGAL BACKGROUND**

"[A] mistrial is appropriate when an event during trial has a real likelihood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has been deprived of a fair trial." *United States v. Collins*, 604 F.3d 481,

1

489 (7th Cir. 2010). A witness's unduly prejudicial testimony, elicited in violation of an order in limine, is grounds for a mistrial. *United States v. Oseni*, 996 F.2d 186, 187 (7th Cir. 1993) (mistrial granted based on witness's prejudicial testimony); *Fields v. City of Chicago*, 981 F.3d 534, 542 (7th Cir. 2020) (mistrial granted due to prejudicial testimony excluded in a pretrial ruling); *United States v. Cornelius*, 623 F.3d 486, 489 (7th Cir. 2010) (same); *see also*, *United States v. Ogoke*, 860 F.3d 924, 930 (7th Cir. 2017) (affirming defense attorney's criminal contempt conviction for violating district court's pretrial ruling, and noting that the attorney "laid the groundwork for his improper argument with a specific line of questioning during trial" such that the district court properly found his conduct during closing argument was not inadvertent).

A curative instruction may suffice to prevent a mistrial where the government's elicitation of unduly prejudicial testimony in violation of a ruling in limine is "inadvertent, isolated and ambiguous." *See, e.g.*, *United States v. Jackson*, 784 F. App'x 946, 949 (7th Cir. 2019); *United States v. Long*, 748 F.3d 322, 328 (7th Cir. 2014); *United States v. Curry*, 538 F.3d 718, 728 (7th Cir. 2008). However, "[a]t some point judicial presumptions must give way to commonsense, and the formulaic recitation of a pro forma limiting instruction may not suffice to cure an error as it may fail to instruct the jury meaningfully as to what it legitimately may do with the evidence." *Barber v. City of Chicago*, 725 F.3d 702, 717 (7th Cir. 2013).

Ascertaining the extent of the deliberateness of a prosecutor or her witness's violation of a motion *in limine* that provokes a mistrial is "critical" in determining

whether a retrial is barred by the Double Jeopardy Clause of the Fifth Amendment. *Cornelius*, 623 F.3d at 496. This is so because in *Oregon v. Kennedy*, the Supreme Court held that double jeopardy bars re-prosecution of a defendant who moves for a mistrial if the government has engaged in conduct giving rise to the mistrial request that was "intended to provoke the defendant into moving for a mistrial." 456 U.S. 667, 679 (1982). If the government has done so, "the Constitution treats matters as if the mistrial had been declared on the prosecutor's initiative" and retrial is barred. *Cornelius*, 623 F.3d at 496 (quoting *United States v. Higgins*, 75 F.3d 332, 333 (7th Cir. 1996).

Given the important constitutional dimension of this issue, district courts "can conduct an evidentiary hearing in order to determine a prosecutor's intent behind an action that precipitated a mistrial[.]" *Id*. at 497, 498 (remanding for evidentiary hearing where government's explanation was "too lacking" and raised questions about the prosecutor's intent that were not satisfactorily answered).

However, regardless of whether there is an *Oregon v. Kennedy* issue, the Court has wide ranging discretion to grant the voir dire of Mr. Lang in order to ascertain why he testified in the manner he did, and in order to develop an appropriate record prior to ruling upon Mr. Burke's motion for mistrial.

## II.    FACTUAL BACKGROUND

Prior to trial, Mr. Burke filed three motions *in limine* (MIL F, H, J) addressing the trial testimony and expected evidence related to Amtrak witness Ray Lang. (Dkt.

247, p.20-21, p.34-35, 38-41).[1] In MIL J, Mr. Burke moved under Fed. R. Evid. 701, 601, and 403 to exclude unhelpful lay opinion testimony of Mr. Lang (and others), including Mr. Lang's testimony concerning the meaning of certain words spoken, or about, Mr. Burke's intent. (Dkt. 247, p.38-41). Mr. Burke argued that during the investigation and grand jury proceedings, the Government had elicited from Mr. Lang that:

> Even though no one ever mentioned Mr. Burke's interest in legal work to [Lang], [Lang] speculated that [Mr. Burke] wanted to be involved in the Post Office matter in order to get tax appeal or zoning work and that "**I thought this was a corrupt arrangement in that Alderman Burke could profit from the arrangement and use influence to get approvals**..." (GJ_036- 000018).

(*Id.* at 40) (emphasis added). Mr. Burke argued that these statements did not meet the criteria of Rules 701, 602, or 403, and were particularly improper because the issue of corrupt intent by Mr. Burke is an ultimate issue in the case tantamount to a legal conclusion. (*Id.*)

In response to Mr. Burke's motion *in limine* concerning Lang's testimony, the Government represented it "does not intend to elicit testimony from this witness

---

[1] In MIL F, Mr. Burke sought to exclude a December 14, 2016 email of Ray Lang (later marked GX219), in which Mr. Lang opined that the Old Post Office developers hiring Mr. Burke (which in fact had *not* occurred at that time), was an "old school Chicago move" on the grounds that the email was not a business record, contained inadmissible hearsay, and was not based on personal knowledge. (Dkt. 247, p.20-21). The Court took this motion under advisement. (Dkt. 309, p.4).

In MIL H, Mr. Burke sought to exclude the kind of testimony the Government had elicited from Mr. Lang in the grand jury, which emphasized that Mr. Burke was a "powerful elected official" and that Mr. Burke's intervention concerning Amtrak "influenced his actions." (Dkt. 247, p.34-35). The Court overruled Mr. Burke's objections, but indicated it would "entertain specific objections under Rule 403." (Dkt. 309, p.7-9).

[Lang] that Burke's arrangement was 'corrupt.' Therefore, defendant's motion as to

that piece of Individual A-3 [Lang's] testimony is moot." (Dkt. 286, p.58).

At the final pretrial conference on October 16, 2023, counsel for Mr. Burke

reiterated the Government's position on the motion, noting that "they've conceded

they're not going to put in [the Lang statement]." (Dkt. 306, p.198). The Government

did not dispute counsel's characterization of its position, and as a result, Mr. Burke's

motion was implicitly denied as moot.[2]

Trial commenced on November 6, 2023, and on the afternoon of November 29,

2023, Mr. Lang testified on direct examination conducted by AUSA Diane MacArthur.

During the direct examination, the Government sought to introduce GX219, an email

thread in which Ray Lang emailed another Amtrak employee on December 14, 2016.

In the email, Mr. Lang wrote in part as follows:

> Also, the owners of the Old Post Office hired Ed Burke today. Alderman Burke (who is a friend of Jeff Moreland) is the longest tenured Alderman in Chicago (first elected in 1969) and a partner at a downtown law firm.....his wife is a Supreme Court justice in Illinois....a very old school Chicago move to hire him.
>
> **GOVERNMENT EXHIBIT 219**

At sidebar, counsel for Mr. Burke objected to the admission of that limited

portion of the larger GX219 email thread, arguing that Mr. Lang's statement that the

Post Office developers hiring Mr. Burke as "a very old-school move," "suggests some

---

[2] Because the Government agreed not to elicit the comment, the Court's ruling on MIL J addresses other aspects of the motion, and does not reference Mr. Lang. (Dkt. 309 at 10).

kind of underhanded dealing that is purely an opinion by him, and it's opinion based on a fact that turns out not to be true, namely that he [Burke] has been hired by these people."[3] Counsel for Mr. Burke explained, "AUSA MacArthur tells me she's going to have him explain that what she—what he meant by 'old-school move,' and I take it it's going to have to do with something underhanded." Counsel continued that "if it just said 'old school Chicago; it wouldn't matter, but it says it was a very old-school move to hire [Burke] … And I think that they're going to have the witness explain that there was some nefarious meaning to 'old school Chicago' and that's improper." The Court overruled Mr. Burke's objection to GX219, ruling that the email itself was "probative of Mr. Lang's impression of what he is in the middle of doing at this moment."

With Mr. Lang back on the stand, AUSA MacArthur then posed the following questions, which elicited the following responses from Mr. Lang:

| | |
|---|---|
| **MacArthur:** | Okay. And then you say in the email that -- after making some reference to Alderman Burke, that, "It was a very old-school Chicago move to hire him." |
| **Lang:** | Yes. |
| **MacArthur:** | What did you mean by that? |
| **Lang:** | A developer hiring and alderman to do property tax work, property work I thought was a – symbolic of the Chicago way of doing business. |
| **MacArthur:** | What do you mean by that? |

---

[3] With respect to the foregoing and below references to the trial proceedings on November 29th, counsel have referred to their notes of the proceedings, as well as a draft transcription of the proceedings. For this reason, counsel have not included citations to the court transcript, because it is in draft form and may change.

**Lang:**                    I mean it's very corrupt.

Counsel for Mr. Burke immediately objected, asking the Court to strike the question and answer as improper. The Court struck the question and answer, and advised the jury to disregard it. Shortly thereafter, at sidebar counsel for Mr. Burke orally moved for a mistrial based on the Government deliberately eliciting testimony from Mr. Lang concerning his belief that Mr. Burke acted corruptly, contrary to the motion *in limine* practice and Court ruling.

In response to Mr. Burke's motion for mistrial, AUSA MacArthur argued that she did not anticipate Mr. Lang's response, explaining that she had given instructions to Mr. Lang about not saying certain things through his testimony, though acknowledging that she did not specifically instruct him to leave out the word "corrupt." The Government argued that the jurors were presumed to honor the Court's instructions to disregard the comment, and in any event the word "corrupt" had been used in opening.

In reply to the Government, counsel for Mr. Burke pointed out that "corrupt" is an "element of the offense," noting:

> It's an element of the offense, and this witness has just told the jury that he's guilty of it. And I know -- I don't doubt that Ms. MacArthur didn't think he was going to say that, but he said it in the grand jury and he was asked about that. She should have known it if she didn't think about it. And there is no way to cure that. You've just got a very aggressive witness up there who's told the jury that he's guilty. And there's no way to cure this.

The Court took the motion under advisement and ordered simultaneous briefing to be submitted by 7:00 am on November 30, 2023. Mr. Lang's direct examination then continued. Prior to dismissing the jurors, the Court again gave a curative instruction.

Following the conclusion of Mr. Lang's direct examination testimony for the day, the Court conducted a further colloquy with the parties concerning the motion for mistrial outside the presence of the jury and witness. At that time, counsel for Mr. Burke further detailed his argument concerning the manner in which the Government had elicited explicitly Mr. Lang's opinion about Mr. Burke which the Government had represented it would not elicit. Defense counsel argued that either the witness, prosecutor, or both had deliberately violated the motion *in limine*. Defense counsel moved further for a voir dire of Mr. Lang concerning what he was told by the Government, and why he violated the Court's order.

In an apparent change from her initial response to the Court concerning her advisal to Mr. Lang, AUSA MacArthur stated in response that she now remembered that she *did* at one point tell the witness not to refer to the word "corrupt" but that she nevertheless was not expecting the answer she received. Asked by the Court what answer she was expecting, AUSA MacArthur explained: "That he, through his position as someone involved in governmental affairs, realized that politicians were involved in a variety of activities, or something much more general than what he actually said. That sometimes politicians use influence. But I did not expect the word 'corrupt' from him. I did have that specific conversation with him."

8

## III.  ARGUMENT

The record before the Court is sufficient to declare a mistrial based on the overwhelming and incurable prejudice caused by Mr. Lang's testimony that a developer hiring Mr. Burke to do property tax work—the central allegation of the Government's sweeping RICO indictment—is "very corrupt." Not only does this testimony flagrantly violate Fed R. of Evid. 701, 602, and 403, as counsel argued in Mr. Burke's original MIL J, but it goes so far as to use one of the actual words— "corrupt"—that will be contained in the Court's jury instructions. *See e.g.*, Dkt. 265, p.44, 57 ("the defendant did so corruptly with the intent to be influenced or rewarded in connection with some business, transaction, and series of transactions of the City of Chicago"). By testifying directly to this ultimate issue of Mr. Burke's state of mind when accepting legal work as a sitting alderman, as well as the states of mind of individuals seeking to hire Mr. Burke, witness Lang has irreparably prejudiced the jury by telling them his view that *all* such relationships are corrupt.

Indeed, this testimony contained *exactly* the kind of highly prejudicial opinion concerning Mr. Burke that the Court and the parties sought painstakingly to avoid with the careful and thorough vetting of potential jurors.

The Court's first curative instruction, as well intentioned and necessary under the circumstances as it was, unfortunately cannot suffice to cure this serious error— as commonsense dictates that there is a limit to even the most earnest juror's ability

to disregard such highly prejudicial evidence. *See Barber*, 725 F.3d at 717 (limiting instructions may not suffice to cure all errors).[4]

It did not have to be this way. Counsel for Mr. Burke repeatedly raised their good-faith concerns regarding the testimony of this witness both pretrial and during his testimony, as set forth above. Further, the Government absolutely knew or should have known, particularly in light of Mr. Lang's grand jury testimony, exactly what would come out of his mouth after twice pressing Mr. Lang to explain "what do you mean by that" when probing him in an area where he had previously shared his unfounded belief that a developer hiring Alderman Burke was "corrupt."

The Government's explanation for the answer the prosecutor expected to elicit also raises more questions than it answers. It appears to the undersigned that the Government *was* seeking that same answer, albeit in perhaps slightly different wording. Simply rephrasing an objectionable answer which has the exact same meaning is still improper, and raises questions about the timing and extent of the conversations the Government had with Mr. Lang to prepare him for such a delicate direct examination.

The Government's imprecision in explaining the nature and extent of its advisals to Mr. Lang also raise legitimate questions that counsel believe are appropriate and necessary to probe at the requested hearing on Mr. Burke's motion.

---

[4] Indeed, counsel fear that the second curative instruction in which the Court referenced Mr. Lang's statement by referring to the meaning of the "Chicago way" a second time may have served to further highlight the comment for jurors—though counsel understand the Court was simply intending to reiterate the curative instruction to ameliorate the great prejudice to the defense.

*Cornelius*, 623 F.3d at 497, 498 (remanding for evidentiary hearing where government's explanation was "too lacking" and raised questions about the prosecutor's intent that were not satisfactorily answered).

For all of these reasons, Mr. Burke respectfully asks the Court to grant his motion for mistrial, and conduct a hearing.

Dated: November 30, 2023          Respectfully submitted,

**JENNER & BLOCK LLP**          **LOEB & LOEB LLP**

By: /s/ *Charles B. Sklarsky*          By: /s/ *Joseph J. Duffy*
Charles B. Sklarsky          Joseph J. Duffy
Kimberly Rhum          Robin V. Waters
353 N. Clark Street          321 N. Clark Street, Suite 2300
Chicago, IL 60654          Chicago, IL 60654
Tel: (312) 222-9350          Tel: (312) 464-3100
csklarsky@jenner.com          jduffy@loeb.com
krhum@jenner.com          rwaters@loeb.com

**GAIR GALLO EBERHARD**

By: /s/ *Chris Gair*
Chris Gair
Blake Edwards
1 East Wacker Drive
Suite 2600
Chicago, IL 60601
Tel: (312) 600-4901
cgair@gairgallo.com
bedwards@gairgallo.com

*Attorneys for Edward M. Burke*